## MARY ANN DEE V. WILLIAM PARISH.

No. A-7194. Decided July 29, 1959.
Rehearing Overruled October 7, 1959.
(327 S.W. 2d Series 449)

*Hill, Brown, Kronzer & Abraham, W. James Kronzer, W. J. Kronzer, Jr.,* and *E. P .Dee,* all of Houston for petitioner.

*Sam W. Davis,* of Houston, for respondent.

MR. JUSTICE WALKER delivered the opinion of the Court.

The controlling question in this case is whether the jury's answers on which the judgment of the trial court is based are findings of ultimate or merely evidentiary facts. Mary Ann Dee, petitioner, brought the suit by her father and next friend against William Parish, respondent, to recover damages for personal injuries alleged to have been sustained when she was thrown from a horse supplied for her use by respondent. The trial court rendered judgment on the jury verdict in petitioner's favor for $2,750.00, but a remittitur of $950.00 was later ordered and filed. This judgment has been reversed and the cause remanded for a new trial, because the Court of Civil Appeals concluded that the finding made in response to Special Issue No. 1 relates to an evidentiary matter and will not support the judgment. 319 S.W. 2d 207. We think the trial court was required to enter judgment for petitioner on the verdict, but the cause must be remanded to the Court of Civil Appeals for consideration of her cross-point attacking the remittitur.

Respondent and his wife operate a riding stable where petitioner had previously taken about seven lessons. On these earlier occasions she had ridden in an arena on respondent's premises and an instructor was always with her. The accident in question occurred on her twelfth birthday. She and three companions were taken to the stable by her father, who made arrangements with Mrs. Parish for them to ride, paid the charge therefor, and left. The oldest child in the group was thirteen years of age. Petitioner had never before ridden off of respondent's premises, but on this occasion the children rode on a bridle path through the park. There petitioner was thrown or fell from her horse as it jumped over a ravine while running.

In the course of the trial, a dispute developed as to whether petitioner was told to leave the premise and ride on the bridle path. Petitioner testified that she and her friends were so instructed by one of respondent's employees while the horses were being saddled. Herman Green stated that he saddled the horses and that he did not tell the children to go into the park. Mrs. Parish said that she told petitioner not to go off the place.

The members of the jury were required by Special Issue No. 1 to resolve this conflict in the testimony. By their answer thereto, they found that respondent, his servants or employees, told petitioner to go on the bridle path through the park. The two succeeding issues, which were also answered in the affirmative, inquired whether such action was negligence and a proximate cause of petitioner's injuries. These are the findings on which

the trial court's judgment must rest. Respondent was given an affirmative submission based on Mrs. Parish's testimony, but the jury refused to find that petitioner was advised not to leave the premises. In answer to Special Issues Nos. 4 and 5, they found that petitioner "by her own act urged or caused the horse to increase his speed and thereby cause her to fall off," but that this was not negligence.

In most cases where a livery stable keeper has been held responsible for injuries sustained by the rider or driver of a rented horse, liability has been predicated upon negligence in failing to furnish a reasonably safe animal for the purpose known to be intended. See Annotation 12 A.L.R. 774. Petitioner's attorneys may have been proceeding on this theory when the suit was filed, because the petition merely alleges in general terms that the horse was negligently rented to her and that such negligence was a proximate cause of the injuries. That is not, however, the theory on which the case was submitted to the jury, and no objections or exceptions to the charge were made by respondent.

Although the evidence shows that the horse which petitioner rode was not particularly vicious or dangerous, it supports the conclusion that she should not have been permitted to go out on the trail on any type of horse. Mrs. Lisa Fuller, one of respondent's riding instructors who had taught petitioner, testified that the latter was a beginner with very little experience, that no child with that few leessons should be turned loose, that the horse would have nothing to do with it, and that if her child had only five or six lessons she would not let him go into the park even on a Shetland pony. She made it a rule to tell any beginner to stay on the premises and not go into the park. Respondent stated that he did not consider petitioner sufficiently capable and experienced to take the horse on the trail, while his wife said that she knew the child was not a good rider.

1 If respondent knew or should have known that petitioner, because of her youth and inexperience, was likely to use the horse in a manner involving unreasonable risk of bodily injury to herself, he is subject to liability for her injuries caused thereby. See Restatement of the Law of Torts, Sec. 390. The jury might have been asked to determine whether respondent rented the horse knowing that petitioner was likely to use it in that manner, but this would have necessitated an additional instruction to make it clear that the animal was rented when it was saddled and turned over to her. There is no reason the question

could not be narrowed to the particular act on which there was a dispute in the testimony and which petitioner claimed was the cause of her injuries.

**2** The horse which respondent supplied apparently was not unsuitable for petitioner's use while under supervision in the arena. If she would have been reasonably safe with the animal while on respondent's property, he should not have directed her to leave and ride in a place where she would probably be injured as a result of either the dangers encountered or the manner in which she handled her mount. The disposition of the animal she rode, the age, judgment, ability and experience of the rider, the risks involved in riding on the trail, and respondent's knowledge of these facts were circumstances to be considered b ythe jury in determining whether a person of ordinary prudence would have told the children to ride on the bridle path. Respondent did not contend in the Court of Civil Appeals that the jury's answer to any issue submitted is not supported by the evidence. The question is whether the findings support the judgment. In our opinion the answers to the first three issues determine ultimate facts which establish respondent's liability, and the trial court did not err in rendering judgment thereon.

Respondent also contends that the fourth finding entitles him to judgment under the maxim *volenti non fit injuria*. This doctrine is based on knowledge and appreciation of the danger and voluntary assent thereto. See Wood v. Kane Boiler Works, 150 Texas 191, 238 S.W. 2d 172; Triangle Motors of Dallas v. Richmond, 152 Texas 254, 258 S.W. 2d 60; McKee v. Patterson, 153 Texas 517, 271 S.W. 2d 391. It cannot be said as a matter of law that petitioner, a child twelve years of age with little experience as a rider, realized and appreciated the danger of her act in urging the horse to increase his speed. Assuming without deciding that a question of fact was raised as to her knowledge and appreciation of the danger, the issue was not submitted to the jury or requested and is now to be regarded as having been found by the trial court in her favor. Rule 279, Texas Rules of Civil Procedure.

**3** As previously indicated, petitioner contended in the Court of Civil Appeals that the trial court erred in ordering the $950.00 remittitur. The point was not considered by the intermediate court and is not within the jurisdiction of the Supreme Court. The judgment of the Court of Civil Appeals is reversed, and the cause is remanded to that court for a determination of the re-

mittitur question in accordance with the principles declared in Flanigan v. Carswell, 159 Texas 598, 324 S.W. 2d 835.

Opinion delivered July 29, 1959.

Rehearing overruled October 7, 1959.