John Norman **HUTTO**, Appellant,

v.

**FANTASTIC HOMES, INC., et al., Appellees.**

No. 16629.

Court of Civil Appeals of Texas.

Fort Worth.

April 30, 1965.

Rehearing Denied May 21, 1965.

Harris, Ball & Davis and Chester G. Ball, Arlington, for appellant.

Simon, Crowley, Wright, Ratliff & Miller and Dan M. Reed, Fort Worth, for appellees.

RENFRO, Justice.

The plaintiff, John Norman Hutto, brought suit against Frank B. Shoneneman, Fantastic Homes, Inc., and Southwestern Climatic Homes, Inc., for damages sustained while working as a carpenter in the construction of a home for one or all of the above named defendants.

From a judgment for defendants based on a jury verdict, plaintiff appealed.

We will refer to the corporate defendants as Fantastic and Climatic respectively. Plaintiff alleged that Shoneneman was president of both corporations and both were engaged in building residences in the City of Arlington.

No issues were submitted or requested, and no evidence was introduced, which would impose liability on defendants Fantastic or Shoneneman, hence judgment for said defendants was undoubtedly proper and therefore is affirmed.

In April of 1961, Climatic was constructing a number of houses on Skylark Street. George Newberry was field superintendent for Climatic.

Paul Thornton had a contract to "frame", put on siding and raise the trusses on the house where plaintiff was injured.

Plaintiff had a subcontract from Thornton under which he was to "frame the house up plate high". Plaintiff engaged and had under his supervision two employees. One was his son R. W. and the other a man named Simmons.

The trusses, made of 2 x 4's, were triangular shaped, and were pre-made by Climatic and hauled to the building site on a four-wheeler trailer pulled by a pickup truck.

When a given house was ready for trusses Thornton would notify Newberry. Climatic would deliver the trusses to the particular building site. That was done on the occasion in question.

We now take up plaintiff's testimony. He testified: In April, 1961, he was a carpenter, 59 years of age. He contracted with Thornton to "frame that house up plate high"; plate high meant to "the bottom of the roof". He was to be paid by Thornton. The accident occurred about the middle of the day, April 21st. While eating lunch he saw the truck drawing the truss-trailer drive up in front of the house and stop. He did not remember seeing the truck or truss-trailer again. After lunch he resumed work, had worked about 30 minutes and had "cut in about 4 window braces" when the truss-trailer turned over on him. The width between the house on which plaintiff was working and the adjacent house was ten feet. There was a three foot downward slope in the ten foot space, the house where plaintiff was working being on the low side. He had not seen anybody park the truss-trailer in the area between the houses. He had no recollection of seeing any one unloading the trusses.

In a deposition prior to trial plaintiff testified the truck driver drove around to the end of the house and stopped. (Apparently that location was the same as where it was standing when it turned over. No witness placed with exactitude the location where the plaintiff was working or the trailer was parked.)

In a deposition taken in a Workmen's Compensation case growing out of the accident, plaintiff had testified: "'Well, Paul called us up there and wanted us to unload some trusses off of a four-wheel trailer, and there were three of us, two would carry awhile and then one of us would swap up and help get them off. * * * I had carried * * * thirty of them off * * * I just walked around over there and bent down to pick up a rig axe or something and had my back towards them, and it just turned over on me.'" He did not deny giving the above testimony but testified he did not remember giving such. He testified he never carried any trusses. He denied that his contract included erection of the trusses, but admitted he always helped unload trusses at Thornton's request.

He further testified that his memory had been faulty since the accident and he really did not know whether he remembered the details of the accident or had just heard people talk about it.

R. W. Hutto, son of plaintiff and plaintiff's employee on the particular job, testified: The Climatic driver parked the truss-trailer between the two houses. Thornton told R. W. and Simmons to unload the trusses. When the driver first arrived he asked plaintiff where he wanted the trusses. "Daddy (plaintiff) said 'I usually take them over the front of the house or the back of the house' * * * the driver said 'they usually take them from the side.'" R. W. heard no more conversation between plaintiff and the driver. R. W. and Simmons started unloading the trusses 20 or 30 minutes later. They started unloading from the high side. They had unloaded 10 trusses when it tipped over on his father. He did not see it turn over but heard the noise. When he looked his father was under the trailer and trusses.

According to Thornton plaintiff was in charge of the crew unloading the trusses and that he, Thornton, did not give plaintiff any instructions regarding the handling of

the trusses. The truss-trailer was 7 feet wide.

Newberry testified the two houses were exactly ten feet apart, with a two foot downgrade. Because of the width of the truck and the size of the open space the trailer necessarily hit the house on which plaintiff was working when it turned over. He did not see the accident; did see marks on the house; whatever method used to get the trusses on the house was O K with him; the trusses were 29 feet overall in length.

Other witnesses estimated the length of the trusses from 20 to 40 feet. They were loaded on the trailer point down, and, again the evidence varied, 25 to 40 were loaded on the trailer.

No complaint is made that the trailer was faulty in any respect. No contention is made that the trusses were improperly loaded on the trailer. That the trailer was parked on an incline was apparent to anyone who looked.

It was undisputed the trailer would not have turned over except for the unloading from the "high side" by plaintiff's employees.

Plaintiff's former employee Simmons did not testify.

The jury found in response to issues Nos. 1, 2 and 3 that Climatic's employees parked the truss-trailer on an incline between the two houses, that such act was negligence and a proximate cause.

Issue No. 4 was: "Do you find from a preponderance of the evidence that plaintiff Mr. Hutto did not see the trailer parked on an incline between the two houses under construction before it turned over?" The jury answered, "He did not see the trailer parked on an incline."

In answer to issues Nos. 5, 6 and 7 the jury found Climatic's employees failed to warn plaintiff the trailer was parked on an incline and such failure was negligence and a proximate cause.

Issues Nos. 8 through 11, conditioned on an affirmative answer to No. 4, were perilous position issues and not answered.

In answer to issues Nos. 12 and 13 the jury found that plaintiff was negligent in working between the trailer and the house and such negligence was a proximate cause of his injuries. The jury answered the damage issues with the sum of $30,000 for injuries and $1,193.55 for hospital and doctor's bills.

The plaintiff contends the court erred in failing to predicate issues Nos. 12 and 13 on issues No. 1 through No. 8 and especially on issue No. 4, and in allowing special issues Nos. 12 and 13 to stand alone without a predicate issue as to duty; in failing to disregard the jury's answers to special issues Nos. 12 and 13 where it had previously been established in special issue No. 4 that plaintiff had no duty.

Defendants pleaded contributory negligence on the part of plaintiff. Plaintiff did not except to the pleading.

Plaintiff did not object to the submission of issues Nos. 12 and 13. In fact, the transcript shows no objections whatever to the charge. No instructions were requested.

■ There was abundant evidence to support the presumed finding of the trial court that plaintiff should have known the trailer was parked where it was. According to plaintiff's own son the trailer had been so parked a minimum of 30 minutes before plaintiff resumed work after lunch. According to plaintiff's own testimony he had been working a minimum of 30 minutes before the accident. Plaintiff knew there was a downgrade between the two houses. He in fact estimated the incline to be steeper than did other witnesses. It is difficult to conceive how a man with no visual or physical handicaps could walk between and work between the side of a house and a large trailer within a space of 2½ or 3 feet, without knowing the trailer was there. Since the open space between the two buildings was only 10 feet, and the trailer was 6 or

7 feet wide, the space between the trailer and the house on which plaintiff was working was necessarily limited as above indicated. Plaintiff's employees had been unloading trusses from the trailer for at least 20 minutes before the trailer overturned. As previously indicated, the trusses were long and large. The services of two men were required to unload the trusses. Approximately one-third of them had been removed from the trailer by plaintiff's employees before the accident, all within a few feet of plaintiff, with nothing to obstruct its view.

 The finding that plaintiff did not see the truck did not preclude a finding that he should have seen it. There can be no doubt the finding of negligence in issue No. 12 is supported by sufficient evidence of probative value.

Under the record in this case we believe a situation is presented which should be governed by Rule 279, T.R.C.P. The submission of issues Nos. 12 and 13 was a partial submission of the whole inquiry as to whether plaintiff was guilty of contributory negligence in working between the trailer and the house. The submission of said issues, under the record, brought any unsubmitted related issue of the group within the provision for presumed findings. 20 Texas Law Review, pp. 32–40, article by J. B. Dooley; Commentaries under Rule 279 by James P. Alexander, pp. 222–3.

 "Under the provisions of Rule 279, Texas Rules of Civil Procedure, an independent ground of recovery or defense not conclusively established by the evidence is waived if no issue thereon is given or requested. When some but not all of a cluster of issues necessary to sustain an independent ground of recovery or defense are given and answered by the jury without objection or request, the trial court may make written findings on omitted issues raised by the evidence. If no written findings are made, the omitted issues are deemed to have been found by the court in such manner as to

support the judgment." Strauss v. LaMark, 366 S.W.2d 555 (Tex.Sup., 1963).

 Since sufficient issues were submitted to the jury to partially present defendants' claim of contributory negligence, no other issue was requested or submitted, and no request was made after verdict for written findings on said omitted issue, it is now to be regarded as having been found by the court in defendants' (appellees') favor. Dee v. Parish, 160 Tex. 171, 327 S.W. 2d 449 (1959).

The judgment of the trial court is affirmed.

Affirmed.