Morin SCOTT d/b/a Tidelands Motor Inn,
Petitioner,

v.

James LIEBMAN, Respondent.

No. A–10939.

Supreme Court of Texas.

May 18, 1966.

Rehearing Denied June 8, 1966.

Baker, Botts, Shepherd & Coates, R. Gordon Gooch, Houston, for petitioner.

Schwartz & Lapin, Houston, for respondent.

GREENHILL, Justice.

James Liebman brought this action against Morin Scott, doing business as Tidelands Motor Inn in Houston, for personal injuries suffered when Liebman walked through a clear glass sliding door at the Tidelands Motor Inn at night. Trial was to a jury which convicted the defendant of negligence and exonerated the plaintiff of contributory negligence. The trial court, however, rendered judgment for the defendant notwithstanding the verdict upon the basis of one phase of assumed risk: that defendant had breached no duty to the plaintiff. The Court of Civil Appeals sitting at Corpus Christi reversed that judgment and rendered judgment for the plaintiff. 391 S.W.2d 540.

Many of the facts appear undisputed. Mr. Liebman's room at the Tidelands was at ground level and had two entrances. One of the entrances was a sliding glass door. The glass was clear and polished. The lights were on inside the motel room. The lighting outside was subdued. There were no tapes, designs or markings to indicate the presence of the glass. The handle and lock were in the frame of the door. One of plaintiff's witnesses, tendered as a "glass door" expert, testified that the glass door was one of common design, and that 90% of sliding glass doors installed at or near the time of the construction of the Tidelands were of that design.

Mr. Liebman and his wife had been at the Tidelands a day or two. He had used the door on several occasions during the day or days they had been there. There was no evidence that he had previously used the glass door at night. But it is undisputed that he knew about the door, knew about the glass, knew how the door was constructed, and knew how it operated. He conceded that he knew that he would be injured if he walked into or through it when it was shut; i. e., he recognized that it would be dangerous to walk into a closed glass door, and he appreciated the danger. The problem is made difficult because it is undisputed that he did not know that the door was closed.

On the occasion in question, Liebman and some business acquaintances and their wives had gone out to dinner and had returned to Mr. Liebman's room at the Tidelands. At about 9:30 p. m., Liebman desired to get a road map and some papers out of his car. He was a nonresident of Texas, and a friend offered to mark his road map for his return trip. The sliding glass door led to the parking area adjacent to Liebman's room. So he opened the glass door, left it open, and proceeded to get his map and papers. Meanwhile, Mrs. Liebman felt chilled; so she shut the glass door. Liebman then proceeded to return to his room; and not seeing the glass door, he walked into it and was severely cut.

■ We regard the evidence as being undisputed that Liebman did not see the glass door in its closed condition. There is no suggestion that he did see it and nevertheless deliberately proceeded to walk through it anyway. One of the plaintiff's witnesses, a business associate who was on the inside of Liebman's room, testified that he and Liebman were looking at each other, eye to eye, as Liebman returned to the room; and Liebman proceeded as though the door were open.

■ Pictures introduced into evidence demonstrated that at night with the lights turned on inside the room, it is difficult from the darkened outside to detect the presence of the glass door in a closed position. There was evidence that there was a small amount of imperfection or warping in the glass; but it, too, is not easily detected. In short, this clear glass door in a closed position at night, under the circumstances here present, would not be regarded by us, in an abstract proposition, as an open and obvious danger of which we would charge people with knowledge.

The issues submitted to the jury, and its answers thereto were as follows: the de-

fendant failed to use such appropriate design of the sliding glass door as would have been used by a person of ordinary care, and this was a proximate cause of plaintiff's injury; the plaintiff Liebman did not fail to keep a proper lookout for his own safety; the plaintiff's wife was not guilty of negligence in shutting the sliding door; it was not an unavoidable accident; and the plaintiff's damages were $7,743.30.

■ The defendant does not have here points of error that there is no evidence to support the answers of the jury. Thus the portions of the trial upon the issues of negligence and contributory negligence ended favorably to the plaintiff. We turn now to the phase of assumed risk mentioned above. The defendant's main position is that since plaintiff had knowledge of the condition [the clear glass door and how it worked], and since the plaintiff conceded knowledge and appreciation of the danger of walking through a closed glass door, the defendant owed the plaintiff no duty. The defendant relies upon A. C. Burton & Co. v. Stasny, 223 S.W.2d 310, Tex.Civ.App.1949, writ refused, and some subsequent opinions of the Courts of Civil Appeals, wherein this Court refused the applications for writs of error with the notation, "No Reversible Error": Acme Laundry Co. v. Ford, Tex.Civ.App., 284 S.W.2d 745 (1955); Crawford v. Given Bros., Tex.Civ. App., 318 S.W.2d 123 (1958); and Raeburn v. City of Houston, Tex.Civ.App., 346 S.W.2d 488 (1961).

The leading case is *Stasny*. There an invitee, in the daytime walked out through a fixed plate glass window which was next to a door. The plaintiff had entered the store through the door next to the window. He knew the glass window was there. The opinion says he had "full knowledge of these facts," but he forgot about the glass window. On his way out when some 30 feet from the window and the adjacent door, he ducked his head and without looking further walked into the window, broke it, and was injured. Having knowledge of the particular defect, which the court said was open and obvious, as it actually existed when the plaintiff walked into the glass, recovery was denied under the theory that the defendant was under no duty to the plaintiff and consequently had breached no duty to him.

We regard *Stasny* as being distinguishable. In *Stasny,* the plaintiff not only knew of the existence of the glass (he stated that he walked around it to enter the store), but he knew that it was in a fixed or closed position through which he could not walk without injury. In *Stasny,* the glass was a static condition. Here it was not. Here the plaintiff knew of the glass; but there is no proof that he knew of the dangerous condition, to wit, the closed condition of the door. A piece of clear glass at night and under the circumstances here present is not so open and obvious as to require the court to charge a person, who walks through it, with knowledge of its presence. The opinion of the Court of Appeals for the Eighth Circuit in Jiffy Markets, Inc. v. Vogel, 340 F.2d 495 (1965), is persuasive on the invisibility of transparent glass at night as that question relates to "open and obvious."

Perhaps Liebman *should have known* about, and *should have seen,* the closed glass door. Perhaps he *should have ascertained* that the door was still open before walking into the room. As indicated, these "should have known" and "should have appreciated" issues were the proper subjects of inquiry for the jury by issues of contributory negligence to be followed by issues of proximate cause. No such contributory negligence issues were requested.[1]

1. In fairness to able counsel for the defense, this trial occurred, and the issues were prepared and submitted, before our opinion in Halepeska v. Callihan Interests, Inc., 371 S.W.2d 368 (Tex.Sup.1963). This problem will be dealt with later in this opinion in ordering a remand for a new trial.

Liebman had had some previous exposure to this glass door and its working. He had opened and closed it, and had walked through the entrance a number of times in the day or two he had been at the Tidelands. As stated, the proof is that these were daytime exposures. While it could be argued that after repeated observations and use of the glass door he knew how it looked in a closed position, there were not sufficient exposures at night here to charge him wtih such knoweldge as was done in Wesson v. Gillespie, 382 S.W.2d 921 (Tex.Sup.1964). Moreover, in *Wesson* the defect was a static condition.

Two of the three opinions by Courts of Civil Appeals previously mentioned are distinguishable upon the same basis as the *Stasny* case. In Acme Laundry Co. v. Ford, 284 S.W.2d 745, the plaintiff in the daytime walked through a fixed glass window or wall next to a glass door. The evidence is clear that the plaintiff knew about the fixed glass window. The court further stated that "there was no evidence that at the time of the accident they [the glass panels] were not perceptible." Since plaintiff knew of the true conditions, it was held that he could not recover. The decision is further buttressed by a holding that as a matter of law, there was no evidence of primary negligence in the construction of defendant's premises.

Similarly, in Raeburn v. City of Houston, 346 S.W.2d 488, the child in the daytime ran through a fixed plate glass panel next to a door. The opinion has, in fact, three grounds for its holding: (1) the court found no evidence of primary negligence on the part of the defendant city; (2) the child "without due care" ran through the building; i. e., the child was contributorily negligent; and (3) citing *Stasny*, there had been no breach of duty. As in *Stasny*, however, the child knew about the condition of the fixed glass (through which he ran) next to the door; but he forgot about it. If Mr. Liebman had closed the door in this case and it had remained closed, and he nevertheless walked back through it, it would more nearly come within the *Stasny, Acme Laundry,* and *Raeburn* cases.

The third case mentioned above is Crawford v. Given Bros., 318 S.W.2d 123. As we read the opinion, the basis of the opinion is the absence of primary negligence on the part of the defendant. Since the defendant's building was "soundly and safely" built, the plaintiff was held not to be entitled to any warning concerning the glass paneling in the store. If there was no primary negligence, the "no duty" aspect of assumed risk was not properly reached.

Opinions from this and other jurisdictions are discussed in An Illusion of Space—The Glass Panel, by Norvell and Farmer, 29 Insurance Counsel Journal 633 (Oct. 1962); Glass Door and Panel Cases, 31 American Trial Lawyers Journal 98 et seq. (1965); and Annotation, "Liability of proprietor of premises open to public for injury occasioned by one walking into or colliding with glass or plastic door, panel or wall," 68 A.L.R.2d 1204 (1959). This opinion has been based in part upon a consideration of those articles.

To review, then, the basic concepts of assumed risk (no duty) and to place this opinion in context with others by this Court,[2] the following will be stated. The

2. For example, Robert E. McKee, General Contractor v. Patterson, 153 Tex. 517, 271 S.W.2d 391 (1954); Smith v. Henger, 148 Tex. 456, 226 S.W.2d 425, 20 A.L.R. 2d 853 (1950); Harvey v. Seale, 362 S.W. 2d 310 (Tex.Sup.1962); Wood v. Kane Boiler Works, 150 Tex. 191, 238 S.W.2d 172 (1951); Dee v. Parish, 160 Tex. 171, 327 S.W.2d 449 (1959); Schiller v. Rice, 151 Tex. 116, 246 S.W.2d 607 (1952); Triangle Motors of Dallas v. Richmond, 152 Tex. 354, 258 S.W.2d 60 (1953); Western Auto Supply v. Campbell, 373 S.W.2d 735 (Tex.Sup. 1963); Halepeska v. Callihan Interests, Inc., 371 S.W.2d 368 (Tex.Sup.1963); Ellis v. Moore and Wardlaw d/b/a Red Town Farm, Tex., 401 S.W.2d 789 (March 22, 1966).

Court begins with the premise that the occupier owes a duty of ordinary care to his invitees. That duty remains unless it is in some manner discharged or removed.

 Under the principles of assumed risk, the duty owed by an occupier to an invitee may be reduced to zero if the invitee assumes the risk or is held to have assumed the risk. This basic concept originated in the leading English case of Thomas v. Quartermaine (Ct. of Appeals) [1887], 18 Q.B.D. 685:

"The duty of an occupier of premises which have an element of danger upon them reaches its vanishing point in the case of those who are cognisant of the full extent of the danger, and voluntarily run the risk. Volenti non fit injuria."

Stated differently, the cases say that the occupier owes no duty if the invitee has actual knowledge of the condition knowledge of the danger, and appreciation of the danger. Or, if the condition is so patently open and obvious that the plaintiff must have seen it, the Court will charge him with knowledge of the condition. It is sometimes stated that the plaintiff may not close his eyes to obvious conditions. Or, the duty is discharged if the occupier warns the invitee. The function of the warning is to give the invitee knowledge and an opportunity to appreciate the danger. Ellis v. Moore and Wardlaw, d/b/a Red Town Farm, Tex., 401 S.W.2d 789 (March 22, 1966). If with such knowledge and appreciation, or if after a warning, the plaintiff in the ordinary case nevertheless proceeds, the duty of the occupier is zero; i. e., the occupier no longer owes any duty to the invitee, and the invitee may not recover because he has assumed the risk.

Applying the above concepts to the facts of this case, we examine the possibilities by which the duty of the Tidelands (to use due care to make the premises safe or to warn Liebman) might have been discharged or removed so that it was no longer under any duty to the plaintiff. The ways which

suggest themselves are (1) actual knowledge of the condition, knowledge and appreciation of the danger by the plaintiff, (2) constructive or charged knowledge and appreciation on the part of the plaintiff (either because the danger was patently obvious or because of repeated exposures), or (3) warning.

As to the first, we have held that Liebman had no actual knowledge of the condition. He conceded that if he had known of the condition—that the door was shut—he would have known and appreciated that it was dangerous. But he did not know of the condition.

 As to the second, constructive or charged knowledge, we have held that the physical conditions at night were *not* so patently obvious as to require us to charge him with knowledge of the condition. Similarly, we have stated that Liebman had not had a sufficient number of previous exposures to the dangerous condition to charge him with knowledge of the condition. Whether he, as an ordinary prudent person under the circumstances *should have seen* the glass, or *should have known* of the condition, are issues of contributory negligence.

Or, as above suggested, the occupier may discharge his duty by warning the invitee (so as to give him knowledge and appreciation). The defendant does not contend that there was any warning; and it is not argued that a warning would have been unnecessary or useless except to say that a person does not need a warning if he knows of the conditions and knows and appreciates the danger. Whether he knew of the condition leads us back to whether there was actual or charged knowledge. We have held that there was none.

 Therefore the duty of the occupier, Tidelands Motor Inn, was not discharged or removed. The duty remained. Since the jury found the defendant-occupier to be guilty of primary negligence and acquitted the plaintiff of contributory negligence, and since there was no removal or discharge of

defendant's duty, the trial court erred in entering judgment for the defendant notwithstanding the verdict of the jury.

■ This brings us to the question as to what judgment should be entered by this Court. The trial court entered a judgment for the defendant. The Court of Civil Appeals found this to have been an erroneous judgment, and with that conclusion we agree. Therefore we begin with an erroneous judgment of the trial court. The Court of Civil Appeals reversed and rendered judgment in favor of the plaintiff. Our problem is whether to affirm that judgment or to order a remand of the cause to the trial court in the interest of justice.

The "interest of justice" question is raised by the following circumstances. The trial of this case occurred before our decision in *Halepeska,* supra. Before that opinion and under Robert E. McKee, General Contractor v. Patterson, 153 Tex. 517, 271 S.W.2d 391 (1954), the "should have known" and "should have appreciated" issues were considered at least by some to be issues of fact for the jury in assumed risk ("no duty" and *volenti*) cases. The statement in Robert E. McKee, General Contractor v. Patterson giving rise to that assumption was disapproved in *Halepeska.* Counsel for the defendant here tells us that in good faith and in reliance upon this Court's opinion in *McKee,* he prepared and requested his "should have known" issue or issues as part of the "no duty" theory rather than as contributory negligence issues to be followed by issues of proximate cause. He therefore urges that his client has not been fairly treated when this Court changes the rules after the case has been tried.

The same thing occurred in *Halepeska.* But in *Halepeska,* the trial court had entered an errorless judgment. Since the trial court had entered an errorless judgment, this Court could not remand in the interest of justice. Davis v. Davis, 141 Tex. 613, 175 S.W.2d 226 (1943); Texas Employers'

Ins. Ass'n v. Brandon, 126 Tex. 636, 89 S.W.2d 982 (1936); City of Houston v. Blackbird, 394 S.W.2d 159 (Tex.Sup.1965).

■ Here, however, the trial court did not enter an errorless judgment. Assuming that other matters set out in the Rules such as 434 are satisfied, it is ordinarily the duty of the appellate court to render the judgment which the trial court should have entered. Le Master v. Fort Worth Transit Co., 138 Tex. 512, 160 S.W.2d 224 (1942).

■ However, both the Court of Civil Appeals and this Court, having found error in the judgment of the trial court, are authorized in a proper case to remand in the interest of justice. Both courts have discretion in this matter. Dahlberg v. Holden, 150 Tex. 179, 238 S.W.2d 699 (1951); Rule 434.[3] Rule 505 specifically authorizes this Court to do so. This power constitutes an exception to the rule announced in the *Le Master* case cited above.

■ The Court of Civil Appeals did not remand in the interest of justice, but that does not preclude this Court from doing so. Southampton Civic Club v. Couch, 159 Tex. 464, 470, 322 S.W.2d 516, at 520 (1959) (on rehearing); Benoit v. Wilson, 150 Tex. 273, 239 S.W.2d 792 (1951). We therefore hold that this Court does have the power to remand in the interest of justice, and we have concluded that this is a proper case in which to exercise that power.

The judgments of the courts below are reversed, and the cause is remanded to the district court for a new trial.

GRIFFIN, WALKER, HAMILTON and STEAKLEY, JJ., dissent.

CALVERT, Chief Justice (concurring).

I concur in the judgment entered. I do so under the rule announced in Halepeska v. Callihan Interests, Inc., Tex.Sup., 371 S.W.

---

3. All rules referred to are Texas Rules of Civil Procedure.

2d 368, 378 (1963), defining the duty of an occupier of land to his invitees, as follows:

"If there are dangers which are not open and obvious, he is under a *duty* to take such precautions as a reasonably prudent person would take to protect his invitees therefrom or to warn them thereof. But if there are open and obvious dangers of which the invitees know, or of which they are charged with knowledge, then the occupier owes them 'no duty' to warn or to protect the invitees. This is so, the cases say, because there is 'no duty' to warn a person of things he already knows, or of dangerous conditions or activities which are so open and obvious that as a matter of law he will be charged with knowledge and appreciation thereof."

WALKER, Justice (dissenting).

I respectfully dissent. In my opinion this case is ruled by A. C. Burton Co. v. Stasny, Tex.Civ.App., 223 S.W.2d 310 (wr.ref.); Acme Laundry Co. v. Ford, Tex.Civ.App., 284 S.W.2d 745 (wr.ref.n.r.e.); and Crawford v. Given Bros., Tex.Civ.App., 318 S.W.2d 123 (wr.ref.n.r.e.). In so far as the question of duty is concerned, it seems to me that there is no material distinction between a fixed glass in an aperture so constructed as to have the appearance of an open door and a sliding glass door which appears to be open when it is closed. There is as much reason to anticipate that an inattentive guest would attempt to walk through the one as the other, and anyone who tries to walk through either will probably be injured. Only one basic difference occurs to me: the visitor could pass unharmed through the doorway if the door happened to be opened but would have no chance whatsoever of getting safely through the fixed glass. I do not see how the cited cases can be distinguished, as the Court says, on the ground that the evidence there failed to show primary negligence in the construction of the premises when that is the very question with which we are here concerned.

It also might be well to observe that this Court has never stated that the occupier of premises owes a duty of ordinary care which "remains unless it is in some manner discharged or removed." In Halepeska v. Callihan Interests, Tex.Sup., 371 S.W.2d 368, we said that "in a suit by an invitee against the occupier, the invitee must not only prove that he was injured as a proximate result of encountering a condition on the premises involving an unreasonable risk of harm, but he must also prove, as part of the plaintiff's case, that the occupier owed him a *duty* to take reasonable precautions to warn him or protect him from such danger."

The Court seems to base its holding, in the last analysis, on the fact that respondent did not have actual knowledge that the door he left open was closed. It fails, in my opinion, to consider and give proper weight to the knowledge with which respondent should be charged as a matter of law. Respondent testified that he knew he would probably be injured if he walked into the closed glass door. He knew that the door was made of clear and polished glass. He also knew that the handle and lock were in the frame, and that there were no tapes, designs or markings on the glass. He further knew that the door was made to open and close. He had used it for that purpose, and he certainly must have known that a door once opened does not necessarily remain open indefinitely. Respondent knew that the interior of the room was well lighted, and that the exterior lighting was subdued. If he did not realize that it was difficult to detect the presence of the glass from the outside under these circumstances, it seems fair that he should be charged with knowledge possessed by every child who has looked through a glass window at night from the darkened lawn into a lighted room of his home.

It is true that respondent did not know that the door he opened had been closed by his wife, but neither did petitioner. Respondent knew as much about the condition of the premises as petitioner knew or might have learned through the exercise of

ordinary care, and in my opinion he is charged in law with appreciation of the danger encounted in using the glass door as he did. I would reverse the judgment of the Court of Civil Appeals and affirm that of the trial court.

GRIFFIN, HAMILTON and STEAK-LEY, JJ., join in this dissent.