Herschel BEATY et al., Appellants,

v.

Ronald Earl WILLIAMS, Appellee.

No. 8382.

Court of Civil Appeals of Texas, Beaumont.

Jan. 10, 1980.

Rehearing Denied Jan. 31, 1980.

**542**

William D. Perkins, Edward T. McFarland, Lufkin, for appellants.

J. T. Maroney, Jr., Lufkin, for appellee.

KEITH, Justice.

Defendants appeal from an adverse judgment based upon a jury verdict in a suit brought under the provisions of the Deceptive Trade Practices—Consumer Protection Act, *Tex.Bus. & Comm.Code Ann. § 17.41, et seq. (Supp.1978–79).* Although the jury found plaintiff's damage to be $8,000, the trial court reduced the sum to $4,559.44, which was then trebled pursuant to *DTPA § 17.50(b)(1),* plus attorney's fees. We reverse and remand for the reasons now to be stated.

On February 21, 1978, plaintiff purchased a used 1975 Lincoln Mark IV automobile from defendants and the original purchase order found in our record, signed by both parties, discloses that it had certain defects needing attention, namely:

"Check Power Steering

Tighten Inside Rear View Mirror

Fix Radio Tuner"

The parties are in accord that defendants agreed to make such repairs to the vehicle after its delivery to plaintiff. Within a few days after the sale, the first two repairs were effected satisfactorily and the radio was removed from the vehicle and sent to an outside repair shop for further work beyond the competence of defendants' mechanics.

·Plaintiff received the vehicle from defendants on Friday, February 24, and testified that he was told that repairs had been made to the radio and that he relied upon such representations. However, and we now quote from plaintiff's brief:

"[A]fter the repairs, he later noticed that there was a gap in the dash between the panel that had to be removed to take out the radio. That night [Friday] . . . plaintiff noticed that as he was attempting to operate the heater switch there was a spark or flash and the dash lights went out. After that, the lights on the dash came on again.

"Thereafter, on Monday, February 27, 1978, while the vehicle was parked, a fire ensued that caused the damages to the Lincoln by reason of a fire located in the dash area near the radio and heater controls . . . ."

The fire caused extensive damage to the vehicle and defendants refused to make the

necessary repairs thereto so as to restore the vehicle to the condition in which it was when sold to plaintiff a few days earlier. This suit was then filed under the provisions of DTPA and there are few facts in dispute.

Without objection on the part of defendants, the Court submitted four special issues. The first read:

> "Do you find . . . that defendants engaged in any 'Deceptive trade Practices' (as that term has been defined for you in this Charge) in connection with the *sale* of the automobile to the plaintiff?"[1] (emphasis supplied)

To which issue the jury answered, "We do."

The jury found, in response to the second issue, that plaintiff was "adversely affected by one or more of the 'Deceptive Trade Practices.'" In answer to number three, the jury found his damages "resulting from the 'Deceptive Trade Practices'" to be $8,000; and, finally, that plaintiff should be awarded reasonable attorney's fees. The fees were stipulated and no further mention will be made thereof.

It is obvious from our statement of the case that the controlling issue of fact was not submitted to the jury. The single liability issue related to the *sale*; and, the parties are in agreement that the radio was known to be defective at the time of the sale and that defendants agreed to make the necessary repairs. It seems inescapable that the defendants, or the radio subcontractor, negligently or carelessly replaced the radio in the vehicle after attempting to make the repairs.

The damages sustained by plaintiff were caused by the failure to properly repair or to properly reinstall the radio; as a matter of law, such damages did not arise out of any representation or warranty made at the time of the *sale*. Indeed, defendants' counsel virtually concedes that plaintiff has a cause of action against defendants for damages "based upon the premise Defendant was negligent in the manner in which it re-installed the radio in the vehicle."

Defendants urge eight points of error upon us in an effort to secure a rendition or, in the alternative, a remand of the cause for a new trial. None of the points now urged so vigorously were presented to the trial court except in the form of a motion for judgment non obstante veredicto. There were no exceptions to the pleadings, defendants interposed no objections to the charge,[2] nor was a motion for new trial filed.

Had plaintiff pleaded his case as one under the res ipsa loquitur rule, he may have made out a case for submission to the jury. It seems certain that he has sustained considerable damage because of the acts or omissions of defendants in the repair and installation of the radio. But, that theory was not pleaded or submitted.

Special Issue No. 1—the liability issue—simply allowed the jurors to make their own determination as to whether or not defendants engaged in deceptive trade practices in connection with the *sale* of the vehicle. This determination was to be made without regard to whether the acts or omissions had been raised by both pleadings *and* proof.

This form of submission was condemned in *Scott v. Atchison, Topeka & Santa Fe Railway Co.*, 572 S.W.2d 273, 277 (Tex.1978). Assuming, arguendo, that the pleadings were sufficient to raise the issue, that was but half of plaintiff's burden; to be entitled to the submission, he must have offered evidence supporting the issue. See J. Pope and W. Lowerre, "The State of the Special Verdict—1979", *11 St. Mary's L.J. 1, 19 (1979).*

---

1. The definition referred to in the issue read: "The term 'DECEPTIVE TRADE PRACTICE' means any false, misleading or deceptive acts or practices in the conduct of any trade or commerce. You are instructed that the term 'false, misleading, or deceptive acts or practices' means an act or series of acts which has the capacity or tendency to deceive an average or ordinary person, even though that person may have been ignorant, unthinking or credulous."

2. We are not called upon to express any opinion, and studiously refrain from commenting upon the form or content of the charge. See and compare *Spradling v. Williams*, 566 S.W.2d 561, 564 (Tex.1978).

We do not believe in trial by ambush nor do we approve of a party reserving for use on appeal a point which should have been brought to the forefront during the trial of the case. We decline to put form above substance and deny plaintiff a right to recover the damages to which he may be rightfully entitled on such a record as presented to us on this appeal.

Conversely, we are unable to affirm a judgment which lacks supporting jury findings on the liability issue. Thus, in the interest of justice [*Scott v. Liebman*, 404 S.W.2d 288, 294 (Tex.1966)], we sustain defendants' second and third points of error.[3] *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

The judgment of the trial court is reversed and the cause is remanded for a new trial.

REVERSED and REMANDED.

3. *Point two*: "[T]here was insufficient evidence to support the Jury's answer to Special Issue Number 1"; *Point three*: "[T]he Jury's answer to Special Issue No. 1 . . . was so against the great weight and preponderance of the evidence as to be manifestly unjust and wrong."