

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-10-00290-CV

XR-5, LP, XR-5, LLC, AND SKULL          APPELLANTS
CREEK CORP.

V.

PETER MARGOLIS, MIKE WOOD,          APPELLEES
AND HITEX RESOURCES, LP

----------

### FROM THE 271ST DISTRICT COURT OF WISE COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

In three issues, Appellants XR-5, LP; XR-5, LLC; and Skull Creek Corp. appeal the trial court's order appointing a receiver. We reverse and remand in part and affirm in part.

---

[1]*See* Tex. R. App. P. 47.4.

## II. Factual and Procedural Background

In January 2009, XR-5, LP[2] was formed by Bura Ray Kelley and others, including Appellees Peter Margolis, Mike Wood, and HiTex Resources, LP, "to acquire, finance, manage, lease and/or sell real estate and/or oil and gas interests." Kelley holds the largest limited partnership interest in XR-5 and is the sole shareholder in WiseTel Inc., XR-5's general partner. Kelley also wholly owns Appellant Skull Creek Corp., a single-asset entity holding the 25.32 acres of real property on which XR-5's well and equipment sit.[3]

Kelley was XR-5's manager. In October 2009, HiTex assigned Jennifer Sprouse, a Certified Public Accountant experienced in forensic accounting, to review XR-5's 2009 books, records, and other financial statements. She performed a follow-up audit in March 2010, and in April 2010, Appellees filed suit, requesting appointment of a receiver under section 11.404 of the business organizations code and claiming that

> [a]ll other remedies available at law or in equity, including the appointment of a receiver over the specific assets of the Defendants, are inadequate to protect the Defendants and the Plaintiffs, in that there is not presently pending any litigation that would allow Plaintiffs to seek the appointment of an ancillary receiver for the specific property of the Defendants, nor do Plaintiffs have a cause of action

---

[2]XR-5, LP is the surviving entity from a June 2010 merger between XR-5, LLC and XR-5, LP.

[3]On January 9, 2004, Kelly and his wife transferred the 25.32 acre parcel to Skull Creek.

that, if asserted, would allow the appointment of a receiver for the Defendants' specific assets.[4]

In July 2010, before the hearing on Appellees' petition to appoint a receiver, Kelley, in an individual capacity, filed a voluntary petition for bankruptcy under Chapter 11.[5] Appellees nonsuited Kelley. At the hearing, Kelley's attorney, who also represented Skull Creek and XR-5, requested a continuance, arguing that the automatic stay associated with Kelley's personal bankruptcy filing prevented the trial court from proceeding on Appellees' receivership petition because Skull Creek, wholly owned by Kelley, was still a party to the suit. Kelley's attorney also stated that because of the stay, he was unable to defend against the receivership and that, should the trial court proceed with the hearing, he did not "see any point in putting on the show just for a—just for show." The trial court denied the continuance and admitted into evidence the affidavits by Sprouse, Kent Madden (an XR-5 limited partner and XR-5's sales manager), and John Elder (proposed receiver appointee) offered by Appellees.

After the hearing, the trial court issued an order appointing a receiver over all of XR-5's and Skull Creek's assets and business activities, namely (1) all real

---

[4]Appellees' sought a receivership because Sprouse's audit revealed that Kelley was not following generally accepted accounting principles and mismanaging XR-5's assets and operations. Sprouse's findings are discussed in detail below.

[5]The trial court had previously granted Appellees' application for a temporary restraining order and a temporary injunction to prevent Kelley from filing for bankruptcy on behalf of XR-5.

3

property, including the 25.32 acres held by Skull Creek; (2) all fixtures, real and personal property, buildings, containers, tanks, equipment, facilities, and contents; (3) all bank accounts; (4) the post-office box Kelley used for all entities; and (5) all accounts payable, accounts receivable, payroll, cash, books, records, and any other papers or software or other records owned or possessed by the entities. This appeal followed.

### III. Discussion

In its third issue, Appellants assert that the trial court abused its discretion by appointing a receiver over Skull Creek and XR-5 despite Appellees' failure to meet the burdens imposed by section 11.404(b)(1)–(3) of the business organizations code.

### A. Standard of Review

We review the appointment of a receiver for an abuse of discretion. *Greater Fort Worth v. Mims*, 574 S.W.2d 870, 872 (Tex. Civ. App.—Fort Worth 1978, writ dism'd). To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004). An appellate court cannot conclude that a trial court abused its discretion merely because the appellate court would have ruled differently in the same circumstances. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995); *see also Low*,

4

221 S.W.3d at 620.  An abuse of discretion does not occur when the trial court bases its decisions on conflicting evidence and some evidence of substantive and probative character supports its decision.  *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009); *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002).

## B.  Business Organizations Code Section 11.404

Section 11.404 of the business organizations code outlines the procedures for the appointment of a receiver to rehabilitate a domestic entity.  *See* Tex. Bus. Org. Code Ann. § 11.404 (Vernon 2010).  The trial court's ability to appoint a receiver is limited by section 11.404(b), which states in relevant part that

> [a] court may appoint a receiver . . . only if:
>
> (1)   circumstances exist that are considered by the court to necessitate the appointment of a receiver to conserve the property and business of the domestic entity and avoid damage to interested parties;
>
> (2)  all other requirements of law are complied with; and
>
> (3)  the court determines that all other available legal and equitable remedies, including the appointment of a receiver for specific property of the domestic entity . . . , are inadequate.

*See id*. § 11.404(b).

The party seeking the appointment of a receiver has the burden to show that section 11.404(b)'s requirements are met.  *See Fortenberry v. Cavanaugh*, No. 03-04-00816-CV, 2005 WL 1412103, at *3 (Tex. App.—Austin June 16,

5

2005, no pet.) (mem. op.) (construing section 11.404's predecessor statute to place burden of proof on receivership applicant).

## C. Affidavits by Sprouse, Madden, and Elder

In her affidavit, Sprouse outlined her education, training, and experience related to conducting forensic accounting reviews before listing the findings from her 2009 audit and 2010 follow-up audit. She stated that her 2009 audit revealed that Kelley had inappropriately commingled XR-5's funds with those of another entity, that Kelley failed to follow generally accepted accounting principles, and that Kelley misapplied XR-5's funds and assets by (1) failing to pay creditors; (2) withdrawing funds without adequate documentation; (3) violating the partnership agreement by making undisclosed consulting-fee payments to a limited partner; (4) improperly accounting for creditors' use of the well in satisfaction of XR-5's debts; and (5) using a portion of XR-5's initial capital for Kelley's personal business. Her 2010 follow-up audit showed that these problems persisted.

Sprouse averred that she was aware that J&M Oilfield Service & Equipment had filed both a lien[6] and a lawsuit against XR-5 for recovery of monies owed and repossession of two pumps that J&M supplied to XR-5. Sprouse noted that J&M already had one of the pumps in its possession and that XR-5's income would cease if J&M repossessed the second pump. Sprouse also stated that

---

[6]Sprouse's affidavit does not provide details on the lien, and a copy of the lien is not in the record.

[b]ased on [her] knowledge and experience as a certified public accountant, and as a result of [her] forensic review, it [was her] opinion that Mr. Kelley's actions as the manager of XR-5 ha[d] caused harm to the financial status of the company. In fact, on the basis of the J&M lawsuit alone and its possible outcomes, XR-5 [was] currently in imminent danger of insolvency.

Attached to Sprouse's affidavit was a copy of XR-5's partnership agreement and a lien affidavit detailing Express Energy Services's belief that XR-5 owned the mineral interest under all or part of the twenty-five acres held by Skull Creek and Express's claim for $28,212.85 of unpaid work that it had provided to XR-5.

In his affidavit, Madden stated that he had nine years' experience in the salt water disposal business and opined that "Kelley [was] misapplying and wasting the assets of the company." Madden noted that Kelley's failure to act to repair pressure on the back-side of the well's tubing had caused a mandatory shutdown of the well, resulting in lost revenue. Madden also noted that Kelley's failure to make timely payments had hurt XR-5's reputation and its ability to obtain credit and opined that "the company's property and business may be further damaged" if Kelley was permitted to continue as manager.

In his affidavit, Elder stated that he was contacted by Appellees regarding his willingness to serve as receiver and that he was capable of, and willing to, serve as receiver if so appointed.

7

### D. Analysis

#### 1. Waiver / Estoppel

Appellees first argue that by indicating at the hearing that testimony was not necessary, Appellants have waived or are estopped from bringing all of their issues on appeal. We disagree; Appellants' statement that witness testimony was not necessary did not absolve Appellees from their statutorily imposed burden of proof. *See Fortenberry*, 2005 WL 1412103, at *3.

#### 2. XR-5

The evidence shows ongoing mismanagement of XR-5's funds and business affairs, the existence of J&M's lien (though not specified in detail), J&M's pending lawsuit against XR-5 for repossession of a pump and monies owed, and Express's lien against XR-5 for $28,212.85. Therefore, we hold that the trial court did not abuse its discretion by concluding that Appellees met section 11.404(b)'s requirements as to XR-5, and we overrule Appellants' third issue with respect to XR-5.

#### 3. Skull Creek

We have reviewed the record, and it contains no evidence to support the trial court's conclusion that Appellees met section 11.404(b)'s burden of proof as to Skull Creek. *See* Tex. Bus. & Org. Code Ann. § 11.404(b); *Fortenberry*, 2005 WL 1412103, at *2. Specifically, Appellees' evidence—the three affidavits—fails to show that the land was in imminent danger of foreclosure and that a receivership over Skull Creek was necessary to protect Appellees' interest in the

8

well. *Cf. Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer*, 904 S.W.2d 656, 660 (Tex. 1995) (stating that pleadings, even if sworn or verified, are not generally competent evidence to prove the facts alleged in them); *Love v. Moreland*, 280 S.W.3d 334, 338 (Tex. App.—Amarillo 2008, no pet.) (noting that argument of counsel is not evidence). Neither Sprouse's nor Madden's affidavits mentioned Skull Creek or Skull Creek's 25.32 acres. The partnership agreement attached to Sprouse's affidavit states that Kelley's capital contribution was land, but it does not identify any specific land to be contributed, and there is no evidence showing that Kelley failed to meet this obligation or that the land held by Skull Creek was the land contemplated in the partnership agreement.

Express stated its belief that XR-5 held the mineral interest in a portion of the land held by Skull Creek. However, this does not—by itself or with the affidavits—show that circumstances existed such that appointing a receiver over Skull Creek was necessary to conserve XR-5's property and business and avoid damage to interested parties. Specifically, there is no evidence to support an implied finding that Skull Creek's land was in danger of imminent foreclosure, that Skull Creek was insolvent, or that Skull Creek's actions put XR-5's operations in jeopardy such that appointing a receiver over Skull Creek's assets and business operations was the only adequate remedy available. *Cf.* Tex. Bus. Org. Code Ann. § 11.404(b)(1), (3). Because no evidence supports the trial court's implied conclusion that Appellees met section 11.404(b)'s requirements as to Skull Creek, we hold that the trial court abused its discretion by appointing

9

a receiver over Skull Creek, its assets, and its business operations, and we sustain Appellants' third issue with respect to Skull Creek.

Having prevailed on a no-evidence issue, Skull Creek would ordinarily be entitled to the rendition of judgment in its favor. *See Vista Chevrolet, Inc. v. Lewis*, 709 S.W.2d 176, 176 (Tex. 1986). However, the supreme court has held that appellate courts have broad discretion to remand in the interests of justice. *See* Tex. R. App. 43.3(b); *Scott v. Liebman*, 404 S.W.2d 288, 294 (Tex. 1996), *abrogated in part on other grounds by Parker v. Highland Park, Inc.*, 565 S.W.2d 512, 517 (Tex. 1978). As long as there is a probability that a case has, for any reason, not been fully developed, an appellate court has the discretion to remand rather than render a decision. *See Ahmed v. Ahmed*, 261 S.W.3d 190, 196 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *Scott Bader, Inc. v. Sandstone Prods., Inc.*, 248 S.W.3d 802, 822 (Tex. App.—Houston [1st Dist.] 2008, no pet.); *In re S.E.W. & S.A.W*, 168 S.W.3d 875, 886 (Tex. App.—Dallas 2005, no pet.). Because Kelley's bankruptcy filing and the trial court's decision to forego testimony at the hearing prevented both parties from fully developing the case with respect to Skull Creek, we will remand this case for further proceedings in the interest of justice rather than render a judgment. *See Bayway Servs., Inc. v. Ameri-Build Constr., L.C.*, 106 S.W.3d 156, 160 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (remanding case after sustaining a legal sufficiency challenge); *see also Davis v. Gale*, 160 Tex. 309, 313, 330 S.W.2d 610, 613 (1960) (remanding to enable parties to supplement evidence); *Schwartz v. Pinnacle*

10

*Commc'ns*, 944 S.W.2d 427, 433 (Tex. App.—Houston [14th Dist.] 1997, no writ) (remanding for full development of the evidence).

Because Appellants' third issue is dispositive, we need not address their remaining issues. *See* Tex. R. App. P. 47.1.

### IV. Conclusion

Having sustained Appellants' third issue, we affirm the trial court's order appointing a receiver with respect to XR-5 and reverse the same with respect to Skull Creek and remand to the trial court for further proceedings consistent with this opinion.

BOB MCCOY
JUSTICE

PANEL: DAUPHINOT, WALKER, and MCCOY, JJ.

DELIVERED: March 24, 2011