Jerome I. SOBEL, d/b/a The Script Shop

v.

Raymond JENKINS, d/b/a Jenkins
Auto Rental.

No. B–2909.

Supreme Court of Texas.

March 15, 1972.

Rehearing Denied April 12, 1972.

Edwards, Faulkner & Giles, John B. Faulkner and Dan A. Makowsky, Waco, for petitioner.

Sheehy, Cureton, Westbrook, Lovelace & Nielsen, J. Robert Sheehy and Philip E. McCleery, Waco, for respondent.

McGEE, Justice.

This is a suit for fraud brought by the buyer, Sobel, against Jenkins, the seller, alleging that the seller wilfully represented that the car was new when in fact it was used. The jury answered all issues in favor of the buyer. The trial court sustained Jenkins' motion for judgment notwithstanding the verdict and rendered judgment that Sobel take nothing. The court of civil appeals has affirmed. 468 S.W.2d 884. We reverse the judgments of the courts below and remand the cause to the trial court.

In this opinion, the parties will be referred to by name. Sobel is the Petitioner here.

On November 1, 1967, Sobel signed a lease-purchase agreement with Jenkins. Sobel thereby leased a 1967 Volkswagen for 24 months at $55 per month with an option to buy the car at any time up to the end of the lease term for $1675 less the amount of lease payments previously made. Sobel used the car as a delivery vehicle during November, December, and January, making the monthly lease payments. Difficulty with the car's starter developed and a dispute arose over the cost of repairs. Jenkins obtained and retained possession of the car from date of delivery of the car for repairs in January until October 14, 1968. Jenkins, in a former lawsuit, sued Sobel as a result of that dispute, but the nature of this cause of action is not disclosed in this record. In the former lawsuit, Sobel filed a cross-action claiming that the car was not in the condition and usable for the purpose for which it was leased and as represented by Jenkins.

Sobel upon advice of his attorney agreed to settle this prior lawsuit by paying $1650 and taking title to the car on October 14, 1968. On January 4, 1969 Sobel received a title history from the Texas Department of Public Safety showing that the car in fact was a used car instead of a new car at the time of the lease-purchase agreement of November 1, 1967. Sobel testified that he later learned the car he purchased was a composite of one car's body and another's chassis which were improperly aligned. This malalignment was the primary source of the repair problems.

On August 13, 1969 Sobel filed this suit against Jenkins for fraud alleging that Jenkins "had knowledge that the Volkswagen was not new but was a used Volkswagen and deliberately and falsely made a misrepresentation to Plaintiff."

In this case the jury answered all special issues in favor of Sobel and found $850 actual damages and exemplary damages in the amount of $5500. As noted above, the trial court rendered judgment notwithstanding the verdict that Sobel take nothing.

The court of civil appeals affirmed the judgment of the trial court on the ground that there was no evidence to support the jury's answers to Special Issues No. 11 and No. 4. The jury findings, as described by the Court of Civil Appeals were as follows:

"(1) The car was not a new car when first delivered by Jenkins to Sobel on November 1, 1967 (the date of the lease-purchase agreement);

"(2) That Jenkins knew at the time of the sale in 1968 that the car was not new when he delivered it to Sobel on November 1, 1967;

"(3) That at the time of the sale in 1968 Jenkins represented to Sobel that the car was new as of November 1, 1967;

"(4) That Sobel believed and relied on the representation of Jenkins;

"(5) That Sobel, but for such reliance, would not have entered into the settlement and purchase of the car from Jenkins;

"(6) That the car would have been worth $1250 at the time of the sale in 1968 if it had been new as of November 1, 1967;

"(7) That the car was actually worth $400 at the time of the sale in 1968;

"(8) That Jenkins wilfully and maliciously represented the car to be new;

"(9) That Jenkins should have $5500 worth of exemplary damages assessed against him;

"(10) That Sobel did not investigate the condition of the car before he got title to the car in 1968; and

"(11) That the transfer of title of the car from Jenkins to Sobel was not a part of the compromise agreement entered into between Jenkins and Sobel in the former lawsuit."

■ We agree with the holding of the court of civil appeals that there is no evidence to support the jury's answer to Special Issue No. 11. In fact, it is undisputed that the prior case was settled by Sobel's payment of $1650 to Jenkins and Jenkins' transfer of title to Sobel. We do not agree with the court of civil appeals' conclusion that this holding requires an affirmance of the trial court's judgment on the grounds that the order of dismissal entered pursuant to the settlement agreement is res adjudicata of the issues raised by Sobel in this case.

The issues as to whether the car was new and was represented as new by Jenkins raised in this case, were not before the court in the former trial. Sobel, long after the former trial had been concluded, learned that the car was not new when he received a title history from the Texas Department of Public Safety on January 4, 1969.

As an additional reason for affirming the judgment of the trial court, the court of civil appeals held that there was no evidence of probative force to uphold the jury's finding in answer to Special Issue No. 4 to the effect that Sobel relied upon Jenkins' representation that the car was new on November 1, 1967, the date of the original lease-purchase agreement.

■ In passing upon the law question of no evidence we must consider only the evidence which supports the jury verdict and consider only the facts and circumstances which tend to sustain the verdict. Moreover, we must reject all evidence and inferences which are contrary to the finding of the jury. Cartwright v. Canode, 106 Tex. 502, 171 S.W. 696 (1914); Biggers v. Continental Bus System, 157 Tex. 351, 298 S.W.2d 79, 303 S.W.2d 359 (1957); C. & R. Transport, Inc. v. Campbell, 406 S.W.2d 191 (Tex.1966).

We will review some of the testimony of Sobel and Jenkins. Sobel testified that he would not have bought the automobile had he not believed it to be new; that the car had been leased to him as new; that it was represented by Jenkins to be a new car; that he would not have paid Jenkins $1650 if he had known that the car was not new; that up until he wrote a certain letter to Jenkins after the dispute arose, he believed all that Jenkins told him. Jenkins testified that he sold the Volkswagen as a new car; that he leased it as a new car. Jenkins further testified that he was told that the warranties were coming and related this to Sobel. Warranties never came.

We quote Sobel's testimony, which, if believed by the jury and it was, would support the jury's answer to Special Issue No. 4.

"Q. All right. When you purchased the automobile, was it represented to you as new or used?

"A. It was represented to be new . . ..

"Q. All right. And would you have purchased the automobile had you known that it wasn't?

"A. Definitely not. . . .

     \*    \*    \*    \*    \*    \*

"Q. Mr. Sobel, did you hear in the Court Room down there Mr. Jenkins again under oath state that this was a new automobile on that same day, when all that occurred in the 19th District Court? [Former trial].

"A. Yeah, sure.

     \*    \*    \*    \*    \*    \*

"Q. Did you intend to settle any claim relative to a used automobile on that date, or relative to a new automobile on that date?

"A. I assumed everything to be new.

"Q. All right. You relied on his word?

"A. Right.

     \*    \*    \*    \*    \*    \*

"Q. Now, after you learned this in December of 1968 and January of '69, from the title itself that this was a used car, certainly, you wouldn't rely on Mr. Jenkins, but prior to that time, did you rely on Mr. Jenkins' statement that this was a new automobile and his statement under oath that this was a new automobile?

"A. I always relied on Mr. Jenkins statement that the car was new up until I saw that piece of paper.

     \*    \*    \*    \*    \*    \*

"Q. All right. Would you have put, without being forced to do it by Court Order or Judgment or something, would you have put that much money, at least $1,320.00 up to $1,-650.00 or $1,675.00, into that automobile if you knew—if it had not been represented to you that it was a new automobile, would you have done that?

"A. No.

     \*    \*    \*    \*    \*    \*

"Q. Now, what you're telling this jury is the man that you said lied to you, the man who testified here on many other things, and if you want me to go down them, I'll go down them, that were contrary to the way you testified, that you relied upon this statement of his in court?

"A. I sure did. I relied upon his statement in court that that car is a new car."

The Court of Civil Appeals relies· in large part on Sobel's letter to Jenkins dated February 15, 1968, some eight months before the former lawsuit was settled as conclusive evidence that Sobel did not rely on Jenkins' statement that the car was new. The letter reads as follows:

"Dear Mr. Jenkins:        2–15–68"

"This letter is to inform you in writing, that I am terminating our lease arrangement on the grounds that you misrepresented the car that I leased from you. I have been without the car since Jan. 25, 1968. I have tried to contact you numerable times and to no avail.

"I contacted your representative and arrangement were made for the German Motor Co. to repair the car. The car was then taken from them and given to someone of your own choosing to repair with my consent, because this other party was much less expensive. I was promised the car or a replacement on Monday, Jan. 29, I called you on the 30th as the car was not yet delivered to me. You told me that the part was in Fort Worth and they would place it on a bus and I would have the car first thing in the morning. As you well know the part has been on the bus now for the past 3 weeks. I never would have leased a car from you had I known that parts have to be or-

dered from Germany. You have lied to me and caused me enormous expense and aggravation due to the fact that I have been without a delivery service since that time. If any question occurs please contact my attorney, Mr. Hubert Dunham."

"Jerome Sobel"

The jury could have concluded that this letter was proof that Sobel did not rely on Jenkins' misrepresentation. On the other hand, the jury could, and did apparently, rely on Sobel's explanation of the letter. On cross examination Sobel testified:

"Q. So, I think you are telling the jury that you did not believe a thing that Raymond Jenkins said except that it was a new car. You said you didn't rely on anything else.

"A. After I wrote that letter, up until the time I wrote that letter, I believed anything he said.

"Q. All right.

"A. When I wrote that letter, the lie that I referred to as stated in that letter, referred to the part as to when the car would be ready, because I never heard of sending to Germany to fix a Volkswagen. And this stall, you know, it'll be ready in a couple of days, then a week goes by and ten more days, and now we've got to send to Germany for parts. After that I got fed up. I had just started off in business myself. I needed a delivery vehicle.

"Q. And just as you said, you didn't rely on anything Raymond said from then on.

"A. That's right, but never did I ever doubt the fact that it was a new car."

■ We hold that the court of civil appeals erred in holding that there was no evidence of probative force to support the jury's answer to Special Issue No. 4.

Jenkins' motion for judgment notwithstanding the verdict contained eleven grounds or reasons therefor. Five of the grounds or reasons were included as cross-points (labeled by him as "reply" points) in Jenkins' brief in the court of civil appeals. In our discussion of Special Issues 11 and 4, we have been dealing with matters which were presented to the court of civil appeals in cross-points 2 and 5. Our disagreement with the holding of the court of civil appeals on those matters would require that we reverse the judgments of both courts below and render judgment on the verdict for Sobel for the amount of damages found in answer to Special Issues 6, 7 and 9, unless Jenkins' other cross-points, if sustained, would result in affirmance of the trial court's judgment for Jenkins or in remand of the cause for retrial. McKelvy v. Barber, 381 S.W.2d 59 (Tex. 1964); Shelton v. Belknap, 155 Tex. 37, 282 S.W.2d 682 (1955).

Jenkins' first cross-point asserts that there is "no legally competent evidence of any representation made by appellee [Jenkins] to appellant [Sobel] of a nature sufficient to support a cause of action for fraud." His third cross-point asserts that there is "no legally competent evidence of reliance" and that "all of the evidence at the trial establishes as a matter of law that the appellant [Sobel] had no right to rely on the alleged representations of the appellee [Jenkins]." These cross-points are without merit and are overruled on the basis of our discussion of Jenkins' second cross-point.

■ Jenkins' fourth cross-point reads as follows:

"The trial court correctly entered judgment for the appellee in disregard of the jury's answers to special issues nos. six, seven, eight and nine because there is no legally competent evidence to support the same and *for the further reason that the answers to said issues do not provide a determination of the proper elements of damage recoverable in a cause of action for fraud.*" (Emphasis added).

The correct measure of damages in this fraud action, as contended by Jenkins, is the difference between the amount actually paid by Sobel for the automobile and the fair market value of the automobile as delivered. Morriss-Buick Co. v. Pondrom, 131 Tex. 98, 113 S.W.2d 889 (1938). The jury's answers to Special Issues 6 and 7 would, if given effect, authorize recovery by Sobel of the difference between the actual value of the car at the time of the sale and the value it would have had at such time if it had been new as represented. A recovery on that basis does not conform to the Texas rule of damages as set out in the *Pondrom* case. Both parties treat this action as one in fraud and not one for breach of warranty under the Tex. Bus. and Comm.Code, §§ 2.313 and 2.714, V.T.C.A. Judgment cannot be rendered for Sobel for the damages found by the jury in answer to issues 6, 7 and 9.

■ Our conclusion that judgment cannot be rendered for Sobel for the damages found by the jury does not mean, however, that the judgment for Jenkins, notwithstanding the verdict, can be upheld. We approve the holding on this question in Collier v. Bankston-Hall Motors, 267 S.W.2d 898 (Tex.Civ.App., Dallas 1954, no writ), which is squarely in point. The jury's answers in this case to the other Special Issues would support a recovery by Sobel of nominal damages, and judgment for Sobel for nominal damages could be rendered here. See *Collier,* supra. However, inasmuch as the judgments of the court of civil appeals and the trial court must be reversed, this court is authorized by Rule 505, Texas Rules of Civil Procedure, to remand the cause for a new trial in the interest of justice rather than render the judgment which the trial court should have rendered. See Scott v. Liebman, 404 S.W. 2d 288 (Tex.1966). Since an erroneous measure of damages was submitted to the jury and Sobel has not had a fair opportunity for a jury finding on a correct measure of damages, we deem it in the interest of justice to remand this cause for a new trial. We consider in this respect that the record reflects the type of good and sufficient reason for a remand envisioned in Jackson v. Ewton, 411 S.W.2d 715 (Tex.1967).

The judgments of the court of civil appeals and trial court are reversed and the cause is remanded to the trial court for a new trial.