**CRAWFORD CHEVROLET, INC., Appellant,**

v.

**Donna ROWLAND, Appellee.**

No. 8525.

Court of Civil Appeals of Texas, Amarillo.

June 9, 1975.

Rehearing Denied July 7, 1975.

Shelton & Gilkerson, Dennis W. McGill and Dale Jones, Lubbock, for appellant.

Maner & Nelson, Cliff Preslar, Lubbock, for appellee.

ELLIS, Chief Justice.

The plaintiff, as purchaser of an automobile, brought suit against the defendant automobile dealer, the seller, for damages allegedly resulting from the purchaser's reliance on the fraudulent statements made by agents and employees of the defendant concerning the condition of the automobile at the time of the purchase. On the basis of a jury verdict, the trial court entered judgment in favor of the plaintiff for $300 actual damages and $5,000 exemplary damages. By this appeal the defendant challenges the judgment on the grounds that the plaintiff failed to establish either the alleged fraudulent conduct on defendant's part or her claim for damages resulting from such transaction. Reversed and remanded.

In her original petition, Donna Rowland, plaintiff-appellee herein sometimes called "Rowland," alleged that the agents and servants of Crawford Chevrolet, Inc., defendant-appellant, herein sometimes called "Crawford Chevrolet," had falsely and fraudulently, with intent to deceive and defraud her, represented that the automobile in question had never been involved in a collision prior to her purchase, and the agents and servants of the defendant corporation then and there knew such representations to be false; and that she relied upon such representations and was induced thereby to purchase such vehicle which had been previously involved in a collision. She claimed actual and exemplary damages as a result of the alleged fraudulent statements made prior to her purchase.

The record shows that on May 18, 1973, Rowland went to the place of business of Crawford Chevrolet in Slaton, Lubbock County, Texas, in response to a newspaper advertisement concerning a particular automobile that the dealer had for sale. Upon arrival at Crawford Chevrolet, she discussed the automobile advertised in the newspaper with Miss Jan Todd, a sales representative of the dealer. Miss Todd showed Rowland a 1973 Oldsmobile Cutlass, identified by Rowland as the automobile included in the newspaper advertisement which specifically set out the purchase price for the vehicle. Rowland stated that there was no one else with Miss Todd when she first showed her the car. She looked at the automobile and observed that the "car was dirty, it had been raining and it was setting outside," and she observed nothing about the car that would lead her to believe that it had been in a collision. Rowland testified that she informed Miss Todd that she was planning to buy a new automobile, and Miss Todd told her that this particular automobile "was like new, it had been traded in, it was owned by a lady here in Lubbock and purchased from Villa Olds (a Lubbock dealer) and was only driven a short way, so the car was in an excellent condition." The automobile showed to have been driven about 2,300 miles. Rowland stated that she inquired of Miss Todd as to whether the car had ever been in a collision and was advised by Miss Todd that it had never been wrecked.

Later, Rowland talked with James Forson, a representative of Crawford Chevrolet. After some discussion, Rowland decided to purchase the car. It was determined that her trade-in allowance on her 1968 Chevrolet Camero would be $750. The sales price written in the contract for the car purchased was $3,788 which was $300 more than the price for which the car was advertised in the newspaper. Upon discussing the price of the vehicle, Miss Todd advised Rowland that the newspaper advertisement was incorrect, and that the true price of the vehicle was $300 more than the advertised price. Also, Miss Todd testified that she informed Rowland that the $300 mistake was a misprint and offered to have this matter verified by a representative of the newspaper. Mr. Forson stated that Rowland questioned him as to where the car came from and he told her that a man in Canyon had bought the car for his personal use. He later testified that he had obtained

that information from Mr. Glenn Crawford, his employer, in a sales meeting. Also, he stated that at no time did he tell Rowland that the car came from Villa Olds, and that Rowland made no complaint regarding the price of the vehicle.

Miss Todd denied that she told Rowland that the car had been purchased from Villa Olds and declared that there was no discussion between her and Rowland as to whether the car had been wrecked. She stated that she advised Rowland that she would have to go to one of the local Oldsmobile dealers to get the warranty papers for the car.

About two weeks after Rowland purchased the automobile, she took it to Villa Olds in Lubbock to obtain a warranty and she was there advised that the car did not come from Villa Olds. Upon consulting Mr. Glenn Crawford, president and general manager of Crawford Chevrolet, concerning the warranty situation, he stated that he was still trying to locate the warranty papers, and that Crawford Chevrolet would give its own one year—12,000 mile warranty. He also advised her that if she were to leave the vicinity of Lubbock and had any difficulty, Crawford Chevrolet would pay the repair bills covered by the warranty. In addition, she claims that Crawford told her on this occasion that the car had never been wrecked. On two or three occasions repairs were made on the car by Crawford Chevrolet at her request; however, she claimed that on one occasion she left the car for a week at Crawford Chevrolet because of a rattle in the back wheel, but the wheel was never repaired. Also, she testified that the window on the driver's side would not roll up and down; the left door would not open and close properly and would "come open" when she turned a corner; and when the door panel was removed, it was discovered that the internal parts of the door were held together with tape. She indicated reluctance to take the car back for repairs after her experience concerning the repair of the wheel.

Shortly after the purchase of the car there was a discussion between Rowland and Crawford concerning a spot on the left quarterpanel "where the paint didn't exactly match." Rowland also stated that about three months after she purchased the car she discovered pieces of shattered glass under the front seat. She further testified that the automobile had not been involved in any wreck or collision since she had purchased it. She had driven the car about 12,000 miles during the period between the purchase and the trial.

Glenn Crawford, who represented that he had been in the automobile business for some 20 to 25 years, testified that he secured the automobile in Canyon from Eddie Knowles, a retail and wholesale car dealer. He had first seen the car at an auction in Amarillo and made a deal through Mr. Knowles who told him that his wife had driven the car. He stated that he had previously discussed with Rowland a small blemish on the quarterpanel and that he had told her that he would take care of that at that time. He testified that there was no visible damage that he could see underneath or from the side to indicate that the car had been wrecked. Further, the car had been taken to other dealers, Smith Ford and Modern Chevrolet, for examination in this regard; that he had personally checked with Smith Ford and that the plaintiff had told him that Modern Chevrolet had checked the car. He claimed that both places "said the car was in fine shape." Rowland testified that Modern Chevrolet advised that they "couldn't tell" whether the car had been in a wreck.

In response to the question, "It's your testimony to this jury today that that car was never wrecked, other than the blemish you saw on the quarter panel?" Mr. Crawford answered, "Yes, sir." When asked to characterize the condition of the vehicle as a used car to be put on his lot, his answer was: "Immaculate or a cream puff, it was a beautiful automobile." Also, he stated that he had made some repairs on the car for

Rowland and if she would "take that car out there today," he would fix it.

David Morgan, an experienced body repairman, who examined the automobile in question, testified that the left quarterpanel had been replaced, the lock pillar, which is the front portion of the quarterpanel where the door closed against it, had been repaired and also repair work had been performed on the left door. Also, he testified that a person who had been in the automobile business 20 to 25 years would only have to open the door and look at the lock pillar, where the grinder marks were plainly visible, and open the trunk to see where the quarterpanel had obviously been "spliced in" to determine that the car had been wrecked. He stated that the price of the parts and labor with respect to obvious repairs would have run no less than $400 and in his opinion closer to $600.

Richard Hardesty, a former employee of Smith Ford, in Slaton, Texas, testified that he had examined the vehicle with a frame gauge. He only examined the frame to determine whether it was true and he did not examine any other portion of the automobile. He found that the frame was true, but he was unable to tell whether the frame had been straightened.

Rowland stated that when she decided to buy the car, she relied upon what she was told by the dealer's representatives. She asserted that she would not have bought the car if she had known it had been in a collision or if she had known where it came from.

The cause was tried to a jury. After the plaintiff had rested her case, the defendant moved for instructed verdict on the grounds that the plaintiff had not established the existence of an issue concerning damages, or to substantiate loss by reason of a collision and had not borne the burden of proving her pleadings with respect to a cause of action. This motion was overruled. At the end of all the evidence the motion for instructed verdict was renewed by the defendant on the same grounds, and such motion was again overruled. The defendant then filed its exceptions and objections to the court's charge which were overruled by the court.

The jury made the following findings based upon the issues submitted: (1) the agents and servants of the defendant represented to the plaintiff that the automobile in question had never been involved in a collision; (2) such representation was material to the transaction in question; (3) the automobile in question had been involved in a collision prior to May 18, 1973 (the date of the purchase); (4) the plaintiff relied upon such representation in agreeing to purchase the automobile in question; (5) the decrease in the market value of the vehicle purchased by the plaintiff caused by having been in a collision prior to May 18, 1973, was $300; (6) that such representations were willfully made with intent to deceive the plaintiff; and (7) the sum of money, if paid now in cash, which would fairly and reasonably punish the defendant for such conduct, is $5,000. The defendant then filed its Motion for Judgment Non Obstante Veredicto, setting out as grounds therefor that there was no legally and properly admissible evidence to support any of the issues submitted, and particularly no evidence to support the jury's answer to special issue no. 5 awarding actual damages to the plaintiff. This motion was overruled. The trial court entered judgment in favor of the plaintiff for $300 actual damages and $5,000 exemplary damages, plus interest and costs. The court overruled defendant's Motion for New Trial which incorporated therein its assertions of error by the court in overruling; (1) its pre-judgment motions for instructed verdict; (2) its objections and exceptions to the court's charge; (3) its objections to the submission of any special issues and in not disregarding the jury's answers to the special issues because they were not supported by a preponderance of evidence properly admitted; and (4) its Motion for Judgment Non Obstante Veredicto.

The defendant's appeal is predicated upon seventeen points of error.

■ By points nos. 4 and 5, the appellant contends that the plaintiff presented no evidence or factually insufficient evidence that the automobile had ever been in a collision. Although appellee testified that the vehicle had not been in a collision since the date of purchase, the heretofore stated testimony of Morgan concerning the type of obvious body repairs that had been performed upon the automobile, Crawford's reference to the blemish on the quarterpanel and Rowland's testimony regarding her discovery of shattered glass under the seat, constituted evidence from which the jury could reasonably infer that the automobile had been involved in some sort of collision. It is our opinion that the evidence submitted and the reasonable inferences therefrom sufficiently support the finding that the automobile had been involved in a collision prior to the plaintiff's purchase of the vehicle. Points 4 and 5 are overruled.

■ In further reference to the collision aspect of this case, appellant, by point no. 9, contends that special issue no. 3 was duplicitous in that the issue inquired as to whether the automobile was involved in a collision and then asked whether the collision happened prior to May 18, 1973, and insisted that such issue was prejudicial and improper. We find no merit in this contention. The issue merely inquired as to whether the automobile had been involved in a collision prior to a specific date and thus required only a single answer and did not involve the giving of one answer to two questions. Rule 277, Texas Rules of Civil Procedure, provides that it shall not be objectionable that a question includes a combination of elements or issues. Point no. 9 is overruled.

Also, regarding the representations allegedly made with respect to the collision, special issue no. 6 inquired as to whether the alleged representations that the automobile had never been involved in a collision were willfully made with intent to deceive the plaintiff. By point no. 11 the appellant asserts that the court erred in submitting such issue on the ground that the issue is not supported by the pleadings or evidence.

■ We have reviewed the pleadings and have determined that the petition contains allegations encompassing the elements of misconduct inquired about in special issue no. 6, i. e., whether the misrepresentations that the automobile had never been involved in a collision, as so found by the jury, were willfully made with intent to deceive the plaintiff. In this connection, it was alleged in the petition that the above mentioned representations were false and then and there known to be false by the agents and servants of the defendant.

■ The evidence likewise supports the submission of the issue. Although no witness directly testified that any false representations were willfully made with the intent to deceive the plaintiff, the elements of willfullness and intent may be inferred by the acts and conduct of the parties. See *Tennessee Gas Transmission Company v. Moorhead*, 405 S.W.2d 81 (Tex.Civ.App.—Beaumont 1966, writ ref'd n. r. e.); *Export Insurance Company v. Herrera*, 426 S.W.2d 895 (Tex.Civ.App.—Corpus Christi 1968, writ ref'd n. r. e.). Further, there was testimony by the appellee that she was told by defendant's salesperson and Crawford that the car had never been wrecked. The testimony of Morgan, the body repairman, was to the effect that it was obvious on his inspection of the automobile that it had been wrecked. Also, he stated that there was repair work of such a nature as to be quite obvious to an experienced automobile dealer to reasonably indicate that the automobile had been involved in a collision. Also, Crawford testified that he was aware of the spot of non-matching paint on the quarterpanel which could reasonably indicate to an experienced automobile dealer that the vehicle had been involved in some sort of collision which resulted in the obvi-

ously replaced quarterpanel and repair work on the doorpost. It is our opinion that the pleadings and the evidence were legally sufficient to justify the court's submission of the issue and that there was sufficient evidentiary support for the jury's response to special issue no. 6. Appellant's point no. 11 is overruled.

By her pleadings the plaintiff claimed damages as a result of the alleged fraudulent statements made to her by the agents and employees of the defendant corporation that the vehicle she purchased had never been in a collision. Since we have sustained the appellee's contentions relating to the alleged fraudulent conduct on the part of the appellant in this transaction, we shall next consider the appellant's contentions, set out in points of error nos. 1–3 that there is no evidence and lack of factually sufficient evidence to support the jury's finding of $300 in actual damages; such finding is against the preponderance of the evidence; and that the plaintiff failed to meet her burden of proof of such damages.

■ The appellee contends that appellant's point of error no. 1 to the effect that the trial court erred in rendering judgment on the jury finding of actual damages because there was no evidence to support this finding, does not assert as error the trial court's overruling of any pre-judgment motion or objection, and therefore it does not assert error which would invoke the jurisdiction of the Court of Civil Appeals. We note that in appellant's brief, immediately following appellant's statement of points of error nos. 1, 2 and 3, reference is made to specific paragraphs contained in defendant's Motion for New Trial, wherein appellant complains of the court's rulings with respect to its pre-judgment motions, including its motions for instructed verdict, Rule 268, T.R.C.P., objections to submission of issues, including issue no. 5, Rule 272, as well as its Motion for Judgment Notwithstanding the Verdict, Rule 301. Since the Motion for New Trial encompassed definite complaints regarding the court's rulings on

pre-judgment motions and objections and other rulings recognized as a basis for legal sufficiency points, as well as complaints regarding the lack of preponderance of the evidence to support the finding, and in the view of the liberality accorded in the application of briefing rules, we shall consider appellant's points of error nos. 1–3 as legal and factual sufficiency points with respect to the "actual damages" aspect of the case.

■ The appellant states in its brief that even if there was fraud in this case (which appellant denies) there is no evidence to support the jury's finding of $300 actual damages. It is well established that the correct measure of damages in a fraud action is the difference between the amount actually paid by the purchaser and the fair market value of the property as delivered. *Sobel v. Jenkins*, 477 S.W.2d 863 (Tex.1972); *Morriss-Buick Co. v. Pondrom*, 131 Tex. 98, 113 S.W.2d 889 (1938). Also, it has been held that if a buyer was induced by fraud to purchase the property, the measure of the buyer's damages is the difference between the value of what the buyer parted with and the value of what he received. *George v. Hesse*, 100 Tex. 44, 93 S.W. 107 (1906); *Massey-Ferguson, Inc. v. Easterwood*, 363 S.W.2d 897 (Tex.Civ.App.—Amarillo 1962, writ ref'd n. r. e.). Also, see *Billy Baker Mobile Homes, Inc. v. Foster*, 390 S.W.2d 385 (Tex.Civ.App.—Austin 1965, no writ).

In this case, the contract price or purchase price of the automobile purchased is not in dispute. It was established that $3,788 is the sales price which the plaintiff paid for the automobile, although there was some discussion between the salesperson and plaintiff relative to the newspaper advertisement setting out the price at $300 lesser amount which the seller's employee contended was an error made by the newspaper in its printing of the advertisement. We note, however, that there was no evidence presented by the plaintiff as to the market value of the automobile on the date she purchased it from the defendant.

We recognize that the appellant gave testimony in answer to a hypothetical question to the effect that if an automobile of the type here involved had been wrecked seriously and had between $500 and $1,000 worth of damages to it and repaired it would probably have $200 to $300 less market value than an automobile of that type that hadn't been wrecked. Also, he testified, in response to a hypothetical question, that if he had two automobiles for sale of the type here involved, and one of them has never been wrecked, and the other has had serious damage to it and had been repaired, and the purchaser knew one had been wrecked, the difference in price of the two automobiles would be about $200. However, it is apparent that Crawford's testimony as to the price charged for the car was on the basis that it had never been involved in a collision.

It has been held that the difference between the actual value of a car at the time of sale and the value it would have had if it had been in the condition represented is not recognized as a proper measure of damages; it does not conform to the recognized rule of damages in a fraud case as set out in *Morriss-Buick Co. v. Pondrom, supra,* which, as stated above, is the difference between the value of what the seller parted with and what he received under the transaction. See *Sobel v. Jenkins, supra.* The above testimony concerning the difference in the value of a car which had been wrecked and repaired and a similar one which had not been wrecked does not meet the required test with respect to the Texas rule of damages in a fraud case as set out in *Morriss-Buick Co. v. Pondrom, supra,* and recognized in *Sobel v. Jenkins, supra.* Also, see *George v. Hesse, supra.*

It is contended by the appellant that the only testimony by any witness as to the market value of the automobile in question came from Mr. Crawford, who, during the course of the trial gave testimony to the effect that the automobile sold to the plaintiff was worth what he charged. However, it must be remembered that Crawford, who is an interested witness, also gave testimony to the effect that other than the small blemish he saw on the quarterpanel "that car was never wrecked." The jury found that the automobile had been involved in a collision prior to the purchase. It does not appear that the testimony by Crawford that the car was worth what he charged, predicated on the premise that it had not been in a collision, would within itself, in view of the jury's findings, be legally sufficient to establish the market price of the vehicle in its condition at the time of sale as being the same as the price paid by the plaintiff. Thus, we cannot agree with appellant's contention that the evidence was legally sufficient to establish that the contract price was the actual market value of the automobile and that judgment should be rendered in favor of the defendant.

The issue submitted inquired as to the amount of decrease in market value, if any, of the vehicle purchased by the plaintiff as a result of having been in a collision prior to the date of the sale. The jury found that such decrease in market value by reason of the previous collision was $300.

From an examination of the evidence in the light most favorable to the finding as required in determining a legal sufficiency point, we do not believe that the evidence submitted was legally sufficient to support the jury finding of the $300 difference in the market value. In the absence of a clear-cut establishment of market value by the evidence, even though the sales price is undisputed, we hold that the jury's finding as to the decrease in market value is without legal evidentiary support and must be set aside. Further, the issue as submitted did not afford the jury the opportunity of making the necessary findings to enable the court to make application of the recognized measure of damages in a fraud case, i. e., the difference between the market price determined on legally sufficient evidence as

to the value of the automobile in the condition which the jury found it to be at the time of the sale and the price the plaintiff paid for the vehicle. Further, we find that the evidence is factually insufficient to support the judgment as to actual damages based upon the jury's finding in response to special issue no. 5. Because of the lack of legal and factual sufficiency of the evidence to support the finding and judgment, we sustain appellant's points no. 1–3 to the extent that the judgment as to actual damages should be set aside.

 It is well recognized that where the evidence was uncertain and inadequate to afford complete data for judgment, and the proper measure of damage was not applied, the interests of justice require a remand. *White v. Watkins*, 385 S.W.2d 267 (Tex.Civ. App.—Waco 1964, no writ). Also see *Commercial Standard Ins. Co. v. Birchfiel*, 383 S.W.2d 77 (Tex.Civ.App.—Amarillo 1964, no writ) and authorities cited therein. In view of the foregoing, and because of the lack of sufficient data to apply the recognized rule of damages, under the present status of the evidence, we hold that a rendition is not justified and a retrial would best serve the interests of justice.

Since we have determined that the finding on actual damages should be set aside, and since, in an action for fraud, exemplary damages are incident to and dependent upon the recovery of actual damages, *Hughes v. Belman*, 200 S.W.2d 431 (Tex.Civ.App.—Austin 1947, writ ref'd n. r. e.), the finding on exemplary damages will likewise be set aside. Further, aggravating circumstances arising from fraudulent conduct may authorize such exemplary damages, as in the fact finder's opinion, the defendant's conduct justifies, and the jury in its discretion may make an assessment of punitive damages from the entire record before it. See 26 Tex.Jur.2d Fraud and Deceit § 136, Exemplary Damages, and cases cited therein.

Our holding on the above matters pretermits discussion of the remaining points of error. Further, it cannot be anticipated that the remaining matters assigned as error will arise in another trial of this cause.

For the reasons above stated, the judgment of the trial court is reversed and the entire cause is remanded for a new trial.