Jesse M. SCHRADER, Appellant,

v.

ARTCO BELL CORPORATION,
Appellee.

No. 1236.

Court of Civil Appeals of Texas,
Tyler.

March 14, 1979.

Rehearing Denied April 19, 1979.

535

John O. Roark, David Fernandez, Jr., Temple, for appellant.

Charles B. McGregor, Beard & Kultgen, Waco, for appellee.

McKAY, Justice.

This is a suit for wrongful discharge under provisions of the Workers' Compensation Act, Articles 8306 et seq., Tex.Rev.Civ. Stat.Ann. (hereinafter referred to as the

"Act"). Appellant, plaintiff below, brought this action against appellee corporation, his former employer, for allegedly having wrongfully discharged him because he filed two claims for compensation for accidental injuries sustained on the job. The Court, after disregarding the jury finding that appellee had discharged or otherwise discriminated against appellant for filing the claims, granted judgment non obstante veredicto that appellant take nothing.

Appellant alleged in his petition that he sustained an injury on the job on January 15, 1974, which caused him to be unable to work until October 16, 1974, at which time he was released by his doctors to report for light duty work. Upon so reporting, appellant alleged that he was informed that there was no such work for him but that he would be allowed to return to work when he was able to perform his regular duties. Appellant alleged in his petition that on or about December 3, 1975, he delivered to appellee a letter from his doctor indicating that he was able to return to full duty, and was informed that he had been discharged. The reason allegedly given for the discharge was that appellant had made a claim for compensation, had hired a lawyer to represent him, and had instituted a proceeding under the Act. This, appellant alleged, constituted a violation of Article 8307c, Tex. Rev.Civ.Stat.Ann. Appellant characterized his suit as one for his reinstatement to his former position, for an injunction to enjoin appellee from precluding such reinstatement, and for past and future damages, in the sum of $10,000.00.

Appellee's answer consisted of a general denial.

Trial was had before a jury. The evidence having shown that appellee removed appellant's name from its roster of employees on March 31, 1975, appellant submitted a trial amendment to that effect. The charge of the court included several definitions and five special issues.[1] Appellant moved for judgment on the verdict; appellee moved that the jury's answer to special issue one be disregarded for the reason that there was no evidence to raise such issue or to sustain the jury's finding thereon, and for judgment non obstante veredicto.

The court granted appellee's motion to disregard the jury's finding with respect to special issue one, stating, "the evidence to raise said issue that the jury finding in answer thereto has no support in the evidence and the argument of counsel . . ." The court found that the evidence raised no

---

1. The pertinent definitions and the special issues with the jury's answers thereto were as follows:

"Discharge" when used with respect to conduct by an employer, means the release, dismissal, or termination of the employee.

"Discriminate" when used with respect to conduct by an employer, means failure to treat everyone according to the standards prescribed that is unreasonable and arbitrary action.

SPECIAL ISSUE NUMBER 1:

Do you find from a preponderance of the evidence that between March 31, 1975, and December 3, 1975, Artco-Bell Corporation discharged or in any other manner discriminated against Jesse M. Schrader for filing a claim or settling a claim under the Texas Workmen's Compensation Act?

Answer "We do" or "We do not."

ANSWER: We do.

If you have answered special issue number 1, "We do," and only in that event, then answer:

SPECIAL ISSUE NUMBER 2:

What sum of money, if any, if paid now in cash do you find from a preponderance of the evidence would fairly and reasonably compensate Jesse M. Schrader for any such discharge or discrimination?

Answer in dollars and cents, if any.

ANSWER: $5,000.00

SPECIAL ISSUE NUMBER 3:

Do you find from a preponderance of the evidence that the plaintiff's employment with Artco-Bell was terminated on March 31, 1975?

Answer "We do" or "We do not."

ANSWER: We do.

SPECIAL ISSUE NUMBER 4:

Do you find from a preponderance of the evidence that the plaintiff was physically able to return to full time work on December 3, 1975?

Answer "We do" or "We do not."

ANSWER: We do.

SPECIAL ISSUE NUMBER 5:

Do you find from a preponderance of the evidence that the plaintiff Schrader failed to comply with the terms of his union contract in seeking to be returned to work on December 3, 1975?

Answer "He failed" or "He did not fail."

ANSWER: He did not fail.

issue of fact and that a directed verdict for appellee would have been proper, and granted appellee's motion for judgment n.o.v. Finding further that appellant's physical condition was such that he could not perform the work of his former job, the court refused to order his reinstatement thereto. Judgment was rendered for appellee and that appellant take nothing by his suit. From this judgment appellant has duly perfected his appeal.

Appellant brings three points of error to this court, the first and second of which complain of the disregarding by the trial court of the finding of the jury in response to special issue one and of the granting of judgment n.o.v. Under these points he argues that the courts have established a policy of liberality in interpreting the Act to effectuate its purpose of protecting workers, that he was not allowed to return to work and was later terminated because he had filed and settled a claim for compensation, and that there was evidence sufficient to raise a jury issue concerning whether appellee had violated Article 8307c.

Article 8307c provides,

"Art. 8307c. Protection of claimants from discrimination by employers; remedies; jurisdiction

"Section 1. No person may discharge or in any other manner discriminate against any employee because the employee has in good faith filed a claim, hired a lawyer to represent him in a claim, instituted, or caused to be instituted, in good faith, any proceeding under the Texas Workmen's Compensation Act, or has testified or is about to testify in any such proceeding.

"Sec. 2. A person who violates any provision of Section 1 of this Act shall be liable for reasonable damages suffered by an employee as a result of the violation, and an employee discharged in violation of the Act shall be entitled to be reinstated to his former position. The burden of proof shall be upon the employee.

"Sec. 3. The district courts of the State of Texas shall have jurisdiction, for cause shown, to restrain violations of this Act."

Rule 301, T.R.C.P., reads in part, "upon motion and reasonable notice the court may render judgment non obstante veredicto if a directed verdict would have been proper, and . . . the court may, upon like motion and notice, disregard any Special Issue Jury Finding that has no support in the evidence." It follows that a jury finding may not be disregarded if there is any evidence of probative force which, with proper inferences arising therefrom, will reasonably support it. *Lynch v. Ricketts*, 158 Tex. 487, 314 S.W.2d 273, 276 (1958); *Pool v. Dickson*, 512 S.W.2d 68, 69 (Tex.Civ.App.-Tyler 1974, no writ); *Frost National Bank v. Nicholas and Barrera*, 534 S.W.2d 927, 932 (Tex.Civ.App.-Tyler 1976, writ ref'd n.r.e.).

In order to sustain the action of the trial court in granting a motion for judgment non obstante veredicto it must be determined that there is no evidence having probative force upon which the jury could have made the findings relied on. *Burt v. Lochausen*, 151 Tex. 289, 249 S.W.2d 194, 199 (1952); *Leyva v. Pacheco*, 163 Tex. 638, 358 S.W.2d 547, 550 (1962). In passing upon these points we must consider the evidence in a light most favorable to the jury findings, considering only the evidence and inferences which support the verdict and rejecting the evidence and inferences which are contrary thereto. *Burt v. Lochausen*, supra; *Grundmeyer v. McFadin*, 537 S.W.2d 764, 768 (Tex.Civ.App.-Tyler 1976, writ ref'd n.r.e.).

The basic facts of this case, as elicited in the trial court, are undisputed. Appellant began working for appellee in 1970. He worked in the injection molding department from then until March, 1973, when he was promoted to assistant foreman of the chrome department. Appellant sustained a fall and injured the lower part of his back in August, 1973, while on the job. He continued to work, however, until December 17, at which time he left his job for approximately four weeks, at the behest of his physician, in order to rest his back. He was a salaried employee at that time and contin-

ued to receive his full pay while he was off work. On the very day he returned to work, January 15, 1974, he was injured a second time. His coat was caught in a machine and was wound into it until it caused the mechanism to stop. Appellant was apparently pulled against the machine and the upper part of his back was injured. Again, however, he continued to work. Due to a complaint registered by the union regarding appellant's having been promoted ahead of other persons with more seniority, he was returned to his job in the injection molding department on March 4, 1974, at an hourly wage, where he continued to work until September 13, 1974. On that day he left work apparently because of physical incapacity due to his second injury. At some time during this period, appellant filed claims for compensation under the Act and retained an attorney to prosecute them for him.

Then on or about October 15, he returned to appellee's plant and showed to his foreman a note from his doctor indicating that he was able to do light duty work. The foreman informed him that there was no light duty work available. In reply to a letter from appellant's attorney threatening suit for appellee's failure to allow appellant to return to perform light duty work, appellee's attorney stated in a letter dated October 18 that appellant would be allowed to return to work when he was able to perform his regular duties.

Thereafter, appellant and his attorney continued negotiations for settlement of his two claims. Agreement was reached with the insurance carrier, a settlement agreement was signed on February 16, 1975, and it was approved by the Industrial Accident Board on February 28, 1975. As a result of such settlement, appellant received $1,315 for his August 1973 injury and $9,944 for his January 1974 injury.

Appellee removed appellant's name from its employee roster on March 31, 1975. As of April 1, 1975, the group life and health insurance coverage which appellee maintained on all of its rostered employees at its own expense was increased, with an accompanying increase in the cost of such coverage to appellee. The contract between appellee and the union which collectively bargained for appellee's employees provided,

"The following interruptions shall terminate an employee's seniority and employment relationship with the Company and includes:

"1) Resigns or quits.

"2) Discharged for proper cause.

"3) Absence due to sickness or accident extending beyond (12) months. In the event of industrial (on-the-job) injuries, this period shall be twenty-four (24) months. This period may be extended by the Company in unusual cases.

.    .    .    .    .

"5. Unauthorized absence from work for more than two (2) days unless the employee notifies the personnel office by the starting time of his shift on the third day  .    . . .  But nothing contained herein shall limit the Company's right to discharge an employee for chronic absenteeism."

Appellant returned to appellee's plant on or about December 3, 1975, with a letter from a psychiatrist who had treated him, and requested that he put back to work at his regular duties. He was apparently informed then by the personnel officer for appellee that he had been discharged. The record indicates that he did not return to appellee's plant for any purpose or have any contact with any representative of appellee regarding his re-employment between October 15, 1974, when appellant requested light duty work, and December 3, 1975.

Appellant's testimony concerning reasons he may have been given for his discharge refers to two incidents: on or about October 15, 1974, he asked for light duty work and on December 3, 1975, he asked for his regular job. With regard to the former, he testified on cross-examination as follows:

"Q [by appellee's counsel] Did you tell your attorney that someone had told you that you couldn't work for them as long as you had an attorney representing you?

"A [by appellant] Did I tell my attorney what, now?

"Q That you could not work for Artco-Bell as long as you had an attorney representing you in a Workmen's Comp case?

"A Did I tell him that—

"Q Yes.

"A —are you asking me?

"Q That somebody out there told you that and you told it to your lawyer?

"A Yes.

"Q Who told you that?

"A Louis [Vittek, appellant's foreman]."

Appellant's testimony that his foreman, Louis Vittek, told him that he could not work for appellee as long as he had an attorney representing him is unchallenged in the record. Vittek was not called as a witness, nor was there any deposition from him.

Appellant also testified concerning his meeting with Oliver Oldham, Executive Vice-President and Personnel Officer, on December 3, 1975, as follows:

"Q . . . What did Mr., or did you and Mr. [Oldham] have a discussion when you took him this letter [from appellant's psychiatrist stating that appellant said he was no longer having symptoms]?

"A Yes.

"Q What did you say to him?

"A I just gave him the letter and I told him I'd like to go back to work.

"Q What did he tell you?

"A He told me that being's as [sic] we made a workmen's comp settle [sic] with you, that we can't put you back to work."

The above quote from the record reveals that appellant testified that personnel officer Oldham told him that since a settlement of appellant's compensation case had been made the appellee company could not put him back to work. It is undisputed that the action of appellee in removing appellant's name from the roster of employees on March 31, 1975, effected his discharge as of that date and the jury so found.

Oldham further testified:

"Q [by appellant's counsel] If you hadn't gotten notice sometime prior, right prior, to March 31st '75, that he had gotten his compensation settlement, he would not have been terminated on that date, would he?

"A I am sure that's right.

"Q So the settlement had a lot to do with the termination, did it not?

"A It's—that's probably right."

It should be noted that special issue one inquired of the jury whether between March 31, 1975, and December 3, 1975, appellee "discharged or in any other manner discriminated against" appellant *"for filing a claim* or *settling a claim "* under the compensation act. The affirmative answer of the jury could have been for either or both causes.

Under the rules we must follow in an n.o.v. case we hold that there is some evidence (more than a scintilla) having probative force upon which the jury could have made the findings relied on. Although there is evidence in the record tending to explain or justify actions by appellee, we must consider the evidence in a light most favorable to the jury findings, considering only the evidence and inferences which support the verdict, and we must reject the evidence and inferences contrary to the verdict. Since the trial court may render a judgment n.o.v. only when a directed verdict would have been proper, a directed verdict is not justified because of factual insufficiency of the evidence. *Smith v. Texas Pipeline Co.,* 455 S.W.2d 346, 351 (Tex.Civ.App.-Corpus Christi 1970, writ ref'd n.r.e.). It would have been error to instruct a verdict if the evidence raised any material fact issue. *Texas Employers Ins. Ass'n v. Page,* 553 S.W.2d 98, 102 (Tex. 1977). Appellant's points one and two are sustained.

In his third point appellant contends that the trial court erred in refusing to order appellee to reinstate appellant to his former position as authorized by Art. 8307c because the evidence showed that he was

physically able to perform the duties of that position. We overrule this point. The burden was upon appellant to establish that he was physically able to perform the duties of the job he had before his injury. The record does not reveal that he discharged that burden. At best appellant's evidence shows that he is willing to return to work, but by his own testimony he said he could lift "up to about 50 pounds," and he still had the same pains he had in October, 1974. There is no medical evidence in the record that appellant could on December 3, 1975, or now can, physically perform the duties of the job he had at the time of his injury.

■■ Appellee brings three cross-points, the first of which complains that the trial court erred in permitting appellant to file a trial amendment after both parties had rested and the court' had prepared its charge and while the appellee was objecting to the court's charge for the reason that it allowed the pleading of the appellant to change the date of the alleged discrimination from the pleaded date of December 3, 1975, to the date of March 31, 1975. Appellee argues that the appellant learned before trial by way of depositions or interrogatories that appellant's name was removed from the roster of employees on March 31, 1975, and that to permit appellant to file a trial amendment after the court's charge had been prepared and while appellee was dictating its exceptions to the charge was prejudicial to appellee.

Whether to permit the filing of a trial amendment is within the sound discretion of the trial court, and its order permitting or refusing a trial amendment will not be disturbed on appeal unless it clearly appears that such discretion has been abused. *City of Houston v. Riggins,* 568 S.W.2d 188, 194 (Tex.Civ.App.-Tyler 1978, writ ref'd n.r.e.); *State v. Beever Farms, Inc.,* 549 S.W.2d 223, 225 (Tex.Civ.App.-San Antonio 1977, writ ref'd n.r.e.). We perceive no abuse of discretion by the trial court. Although appellant alleged in his pleading that he was discharged on December 3, 1975, it was undisputed in the record that appellant's name was removed from the roster of em-

ployees of appellee on March 31, 1975, and even if appellant did not file his motion for leave to file his trial amendment until the charge was prepared and appellee was objecting to it, there was no surprise to appellee, and we fail to see 'that appellee was prejudiced. Appellee's first cross-point is overruled.

■ By cross-point two appellee maintains the trial court erred in submitting special issue one by including the phrase "Artco-Bell Corporation discharged or in any other manner discriminated against" appellant because such phrase was not supported by the pleadings and constituted a comment on the weight of the evidence. Argument is made by appellee that appellant's pleading claimed only that he was discharged because he was injured on the job and was making a claim for workman's compensation benefits, and that such pleading did not set forth any other claim or set out any discrimination against appellant, and there was no evidence to justify such inquiry concerning discrimination.

Appellant pled that appellee informed him he was discharged from his employment because he was injured on the job and was making a claim for compensation benefits, that he had hired a lawyer to represent him in his claim, and had, or had caused to be instituted a claim for compensation. Appellant also set out in his petition verbatim Art. 8307c, and then pled that appellee violated said statute. In issue one the trial court followed the language of the statute by including "or in any other manner discriminated against" appellant. Appellee argues that this language could mislead the jury in that it amounted to comment by the court that the court felt there were other matters which the jury might consider in answering issue one. We do not believe such a strained interpretation is called for. The record indicates that the discharge by appellee was the only complaint made in the evidence with reference to issue one. We do not believe that it was so misleading that the trial court committed error in submitting the issue as worded; however, if we be mistaken, we believe such error to have

been harmless. Rule 434, T.R.C.P. Appellee's second cross-point is overruled.

■ In its last cross-point appellee contends that the trial court erred in submitting special issue two because its reference to issue one allowed the jury to consider damages which would have arisen after March 31, 1975, which the jury found to be the date of discharge, and December 3, 1975, which date had been originally alleged in the pleading, when such damages would not have been recoverable as a matter of law. Appellee argues that the manner in which issue two was submitted allows, or even instructs the jury to consider damages between March 31, 1975, and December 3, 1975; that during such period appellant made no effort to return to work, did not bring a medical statement that he was able to return to work, and now indicates he would not have gone to work earlier.

Appellant testified he earned about $6,000 per year "the last year or two" he worked for appellee, and that in 1977 he made $4,517 building houses. The record discloses that appellant was discharged (by removing his name from the roster of employees) on March 31, 1975, but he did not learn of such discharge until December 3, 1975. The jury awarded appellant $5,000 in damages. The court's charge did not instruct the jury what might be considered in arriving at any damages. Appellant's cause of action was for discriminatory discharge, and the damages assessed were not necessarily based upon the period from March to December, 1975. Cross-point three is overruled.

■ In its brief appellee also has what it calls its alternate motion to remand with instructions and a request to allow the filing of motion for new trial. There is in the record "Defendant's Bill of Exception No. 1," approved by the trial court, in which appellee claims there was jury misconduct and attached thereto is the affidavit of a juror. The affidavit states that several votes were taken on issue one but the jurors were about evenly divided and could not agree; that the jury then proceeded to answer issue two; that one juror then pointed out that they were not to answer the damage issue (two) unless issue one was answered "we do"; that after further discussion the jurors then voted 11 to 1 to answer issue one "We do."

Rule 324, T.R.C.P., provides that in an n.o.v. case the appellee may bring forward by cross-point "any ground which would have vitiated the verdict or would have prevented an affirmance of the judgment had one been entered" on the verdict, including but not limited to insufficient evidence or improper argument of counsel, and the failure to bring such cross-points shall be deemed a waiver thereof except such grounds as require the taking of additional evidence.

A jury verdict may not be impeached or destroyed by questioning the jurors to ascertain whether they disobeyed or misunderstood the charge or misunderstood or misapplied the facts in evidence. *Bradley v. Texas & P. Ry. Co.,* 1 S.W.2d 861, 863 (Tex.Comm.App., Sec. B 1928); 3 McDonald, Texas Civil Practice, Sec. 14.17 (1970). Rule 324 is not clear as to the proper procedure when there is a cross-point which requires additional evidence; however, in our view the bill of exception together with the juror's affidavit, taken as true, would not require nor permit an examination of each juror for evidence of misconduct. The motion to remand is overruled.

Judgment of the trial court insofar as it disregards the verdict of the jury in issues one and two is reversed, and that portion of the judgment which provides appellant is not entitled to be reinstated is affirmed; judgment is here rendered that appellant recover $5,000.00 from appellee in accordance with the verdict of the jury.