**Irene MARQUEZ, et al., Appellants,**

v.

**SEARS, ROEBUCK & COMPANY, Appellee.**

**No. 16641.**

Court of Appeals of Texas, San Antonio.

Nov. 18, 1981.

Rehearing Denied Dec. 15, 1981.

John C. Laye, Jr., San Antonio, for appellants.

Randall B. Richards, Jess W. Young, Young & Richards, Inc., San Antonio, for appellee.

Before ESQUIVEL, BUTTS and BASKIN, JJ.

**3.** Tex.Code Crim.Pro. art. 36.19 (Vernon 1981).

## OPINION

BASKIN, Justice.

This is a suit for damages for breach of contract. Appellants (plaintiffs) appeal from a judgment notwithstanding the verdict in favor of appellee (Sears).

In April, 1975, plaintiffs entered into a written contract with Sears whereby Sears agreed "to provide the necessary treatment to protect the premises ... against the attack of subterranean termites for the sum of $169.00." Sears also agreed the reinspection would be made at least once during the contract year and that any further treatment then found necessary would be performed free of charge. Sears agreed that for the additional sum of $25.00, it would extend the contract for one year, over a period of five years. Lastly, Sears provided in its contract and guarantee the following language:

"Sears further agrees that if new subterranean termite damage to the structure or contents occurs while this contract is in effect, then Sears will, upon notification and inspection, arrange for necessary repairs at its expense. New subterranean termite damage is that damage done by termites over and above existing damage at the time this contract was originally entered into (as indicated on the attached form), with live termites being found in the damaged area. The liability of Sears for repair shall not exceed $25,000."

A few days later Sears treated the plaintiffs' house for subterranean termites. Subsequently the plaintiffs extended their contract annually for each year relevant in this cause. There is no evidence that Sears returned to the house until called by one of the plaintiffs in April of 1976, at which time the house was treated once more. In November, 1977, plaintiffs, having noticed some insects on the screen door, again called Sears to complain of termite damage. Answering the complaint call, a Sears representative found some subterranean termite damage to the support posts in the carport of plaintiffs' home, accompanied by the presence of live subterranean termites. Sears once more sprayed plaintiffs' house

for termites, and about ten days later, a man from Sears returned and could find no live termites following the most recent treatment. He told one of the plaintiffs that Sears would replace the carport support posts which had been damaged by subterranean termites. Plaintiff declined to allow Sears to replace only the carport posts but demanded that all damaged wood in the house be replaced. Plaintiffs' filed their lawsuit on December 29, 1977, alleging breach of contract, intentional and grossly negligent acts, and various unlawful and fraudulent representations under the Deceptive Trade Practices Act, praying for damages of $20,000 for breach of contract including a demand for a $30,000 punitive damages trebled under the Deceptive Trade Practices Act to $90,000, plus $5,000 for attorney fees.

The primary testimony regarding plaintiffs' damages was given by Pete Villa, a general contractor. Villa testified that he first inspected the house in June of 1979, a year and a half after suit was filed, at which time he saw some live termites and mud tunnels on the exterior of the house. He also saw some termite damage to the bedrooms and the window sills, underneath the house and on the west side of the house, as well as the damage to the posts in the carport. On June 16, 1979, he submitted a bid for repair of termite damage in the amount of $39,000, even though he conceded that he could not distinguish between Formosan termites, drywood termites, and subterranean termites, as he was not an authority on termites. He testified that the reasonable and necessary cost to repair the termite damage was $39,774, but he admitted that the bid was for a complete remodeling job. The remodeling job would include repair of anything that needed repair, such as electric wiring, plumbing and replacement of asbestos siding, none of which were damaged by termites. He also recognized that there was some water damage, particularly around the bathroom, which would be repaired. Villa reiterated that his bid was not just to repair termite damage but was to remodel the whole house.

A number of photographs were introduced into evidence to demonstrate termite damage. Most of the photographs had been taken by plaintiffs' counsel just before trial in April, 1980, nearly two and a half years after institution of suit. Maria Marquez, one of the plaintiffs, testified that no photographs were taken at or near the time of filing suit and that some of the damage shown in the photographs in evidence was more severe than that which existed at or near the time suit was brought.

Upon trial of the case to a jury, the jury found, in answer to special issue number 1, that Sears failed to provide necessary treatment to protect the premises of the plaintiffs against attack from subterranean termites during the period April 11, 1975, to December 29, 1977; in answer to special issue number 2, that the failure of Sears so to provide treatment to protect the premises of plaintiffs against attack of subterranean termites was the proximate cause of plaintiffs' damages to the premises; in answer to special issue number 3, that Sears failed prior to December 29, 1977 to arrange for necessary repairs for new subterranean termite damage to plaintiffs' premises according to the termite control contract; in answer to special issue number 4, that the failure of Sears to arrange for necessary repair was not the proximate cause of plaintiffs' damages; in answer to special issue number 5, that the amount of money which would fairly and reasonably compensate plaintiffs for the damage to their premises proximately caused by the acts or omissions of Sears was $25,000.

Several additional special issues were answered by the jury favorably to plaintiffs' contentions of deceptive trade practices. We need not consider them, however, as on oral argument, counsel for plaintiffs conceded that the plaintiffs had failed to make a case under the Deceptive Trade Practices Act and asked that we consider the case as being for breach of contract only. We agree with plaintiffs that no case was made under the Deceptive Trade Practices Act, both because there was no written notice by plaintiffs to Sears at least 30 days before filing suit of the complaint and the amount of damages claimed as required by Section 17.50(A) of the Act and because there was no damage caused by any deceptive trade practice.

Following the trial, plaintiffs filed Motion To Enter Judgment, wherein they asked the court to enter judgment in the amount of $25,000, trebled to $75,000, with attorneys' fees as found by the jury, along with interest. Sears filed its Motion For Judgment Non Obstante Veredicto, or in the alternative, Motion to Disregard Findings on Special Issues. In that motion, Sears asked the court to enter a judgment non obstante veredicto on the ground that there was no evidence or alternatively insufficient evidence to support the findings to special issues numbers 1, 3, and 5 (and certain other special issues with which we do not concern ourselves now.) Alternatively, Sears thereby asked the court to disregard the findings to special issues numbers 1, 2, 3, and 5 on the grounds either of no evidence or of insufficient evidence. Thereafter, upon notice and hearing, the trial court granted the motion for judgment notwithstanding the verdict and entered judgment for Sears, stating "that there is no evidence of probative force to sustain the verdict of the jury, and that an instructed verdict in favor of the Defendant would have been proper . . . ." It is from such action of the trial court that plaintiffs appeal.

■ To sustain the action of the trial court we must determine that there was no evidence of probative value upon which the jury could have made the finding relied upon. *Schrader v. Artco Bell Corp.*, 579 S.W.2d 534 (Tex.Civ.App.—Tyler 1979, writ ref'd n.r.e.). Rule 301 does not, however, require that there be "no evidence at all" but comprehends those situations in which the evidence is deemed legally insufficient to establish an asserted fact. *TM Productions, Inc. v. Nichols, III*, 542 S.W.2d 704, 707 (Tex.Civ.App.—Dallas 1976, no writ).

■ After a careful examination of the record in this case, and applying the foregoing legal standards, we find that there is no

legally sufficient evidence to support the jury's finding as to the amount of damages; and we also find that there is insufficient evidence of probative force to support such jury finding.

We turn now to the question of whether the trial court, in view of our holding as to the evidence, correctly granted a motion notwithstanding the verdict and entered a take-nothing judgment in favor of Defendant Sears. The evidence in this case is undisputed that the plaintiffs entered into a contract with Sears whereby Sears agreed to treat the house for termites and make repairs for any new damage caused by subterranean termites while such contract was in force. The evidence is also undisputed that the plaintiffs extended the life of the contract by annual renewals. Equally undisputed is the fact that some new damage to plaintiffs' house was caused by subterranean termites between the inception of the extermination contract and the institution of suit; and it is undisputed that Sears offered to make certain repairs in performance of its contract. The real point in issue in the case was the reasonable value of repairs to plaintiffs' house made necessary by subterranean termite damage between the date of the inception of the contract and institution of suit. The jury's answer of $25,000 to special issue number 5 was unsupported by the evidence as well as by the pleadings. Entry of judgment for no damages, however, is also unsupported by the evidence, in that both parties agree that there was some new subterranean termite damage, and Sears admitted that it owed the duty to make certain repairs on the house, estimating the value of such repairs to have been $1,600 at that time.

We hold that the trial court erred in granting the judgment notwithstanding the verdict; but since the parties are in agreement that some new subterranean damage occurred, we believe that the cause should be remanded in the interest of justice. *Scott v. Liebman*, 404 S.W.2d 288, 294 (Tex. 1966); *Crawford Chevrolet, Inc. v. Rowland*, 525 S.W.2d 242 (Tex.Civ.App.—Amarillo 1975, writ ref'd n.r.e.).

The judgment is therefore reversed and the cause remanded to the trial court.

BUTTS, Justice, dissenting.

I respectfully dissent. I disagree with the holding that "that the trial court erred in granting the judgment notwithstanding the verdict; but since the parties are in agreement that some new subterranean damage occurred, we believe that the cause should be remanded in the interest of justice."

After concluding that there is no evidence to support a vital fact, such as the amount of damages, this court cannot properly reverse the judgment and remand for further development of the same or similar evidence. There is no showing on appeal that the evidence had not been fully developed before the jury, or that the parties proceeded under a misapprehension of what the present law is and, consequently, that the parties may have been denied a fair trial by their own good faith actions, in relying on the wrong theory of law. *See Scott v. Liebman*, 404 S.W.2d 288 (Tex. 1966). The parties were not prevented from presenting evidence of damages. The "admission" by defendant that it owed the duty to make certain repairs which it valued at the sum of $1,600 was in evidence before the jury. The fact of "some new subterranean damage" was squarely before the jury throughout the trial, which they must have considered in answering the special issues submitted.

The appellants, plaintiffs below, do not ask for the relief which the majority now would grant. Instead they filed their motion for judgment on the verdict in the trial court. "A motion for judgment on the verdict is an affirmation by the movant that the findings of the jury are supported by competent evidence." *Skeen v. State*, 550 S.W.2d 713, 716 (Tex.Civ.App.—El Paso 1977, writ ref'd n.r.e.). Neither the appellants nor the appellee bring forward by points the matters now advanced by the majority decision. In *Crawford Chevrolet, Inc. v. Rowland*, 525 S.W.2d 242 (Tex.Civ. App.—Amarillo 1975, writ ref'd n.r.e.), the

defendant's motion for judgment notwithstanding the verdict was overruled. Defendant there brought the point forward that there was lack of legal and factual sufficiency to support the jury findings and the judgment as to actual damages. This was an action for fraud, and the appellate court agreed that the correct measure of damages had not been applied. " . . . . because of the lack of sufficient data to apply the recognized rule of damages, under the present status of the evidence, we hold that a rendition is not justified and a retrial would best serve the interests of justice." at 250.

Although the amended rules of civil procedure do receive liberal construction by the courts, the complaining party still has the duty of raising points of error and assignments of error where appropriate. Tex.R. Civ.Pro. 320, 321, 324. The rules do not contemplate that the appellate courts postulate as to "what might have been." Since the point on which the majority would reverse and remand for a new trial has not been brought forward by either party on appeal, I believe it to be inappropriate for our consideration. Moreover, the two evidence subjects, that is, the lower sum of money, $1,600, as damages and new subterranean termite damage, were part of the jury's consideration.

One of the few correct procedural steps to arrive at a "no evidence" determination is a motion for judgment notwithstanding the verdict. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, Vol. 38, Texas L.Rev. 361 (1960). That there was no evidence to support the jury's findings is evident from the record. The proper action for this court is to affirm the trial court's finding of "no evidence" and granting of the judgment notwithstanding the verdict. *See* Tex.R.Civ.Pro. 434 and 301.

It is for these reasons that I dissent.